The City of Chicago, Defendant in Error, *vs.* The Chicago and Oak Park Elevated Railroad Company, Plaintiff in Error.

*Opinion filed February 21, 1914.*

1. Ordinances—*effect of Chicago ordinance concerning license fees for cars used by Lake Street Elevated Railroad.* The Chicago ordinance of October 1, 1894, requiring license fees on all cars *in regular use* on that branch of the line of the Lake Street Elevated Railroad Company authorized to be built under such ordinance, was intended to apply in case such branch is operated as an independent line, but it did not repeal the license fee provisions of the ordinances of November 24, 1890, and under such ordinances the company is bound to pay a license fee on each car *used in transporting passengers for hire,* though such cars run over the branch line authorized by the ordinance of October 1, 1894, in connection with their trip over the other branches of the company.

2. Same—*ordinances should be construed, if possible, so they will not conflict.* Ordinances should be construed, if possible, so they will not conflict, and if an ordinance is susceptible of two constructions, one of which will support and the other defeat it, the construction which will support it will be adopted.

3. Same—*ordinance granting right to construct railway will be construed most strongly against grantee.* An ordinance granting the right to construct and operate a street railway system will be construed most strongly against the grantee.

4. Same—*repeals by implication are not favored.* The rule that statutes will be so construed as to avoid a repeal by implication if such repeal can be avoided upon any reasonable hypothesis, applies in construing ordinances.

5. Municipal corporations—*what does not raise estoppel in pais.* The mere failure of officers of a municipal corporation to assert a right does not work an estoppel *in pais,* and before such doctrine can be applied there must be some positive acts by the municipal officers which have induced the party relying thereon to take such action that it would be inequitable to permit the municipal corporation to stultify itself by retracting what its officers have done.

6. Same—*what does not estop city from collecting full amount due for license fees on cars.* The fact that an employee in the city collector's office has accepted, year after year, the statement of an elevated railroad company showing the number of cars on which

license fees were due and has accepted payment of the fees according to such statements, does not estop the city from collecting license fees for the period covered by such statements on cars which the company should have included.

WRIT OF ERROR to the Branch "C" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

JAMES J. BARBOUR, (ADDISON L. GARDNER, and ISHAM, LINCOLN & BEALE, of counsel,) for plaintiff in error.

WILLIAM H. SEXTON, Corporation Counsel, (CHARLES M. HAFT, of counsel,) for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Defendant in error, the city of Chicago, filed a bill of complaint in chancery, and afterwards an amended and supplemental bill, in the circuit court of Cook county, against the plaintiff in error, the Chicago and Oak Park Elevated Railroad Company, (formerly the Lake Street Elevated Railroad Company,) praying for discovery and an accounting, alleging, in substance, that the city council of the city of Chicago had passed certain ordinances which were accepted by the plaintiff in error company or its predecessors. The ordinances were set out as exhibits to the bill. Exhibit "A" was an ordinance dated November 24, 1890, authorizing the construction of the elevated road of plaintiff in error on Lake street from the east line of Crawford avenue west to the city limits, and commencing at the west line of Canal street and extending east to the east line of Market street. Exhibit "B" was an ordinance of the same date, November 24, 1890, and authorized the construction of a railroad from the west line of Canal street to Crawford avenue. Exhibit "C" was an ordinance enacted December 19, 1892, approving the transfer from the Lake Street Elevated Railway Company to the Lake Street Ele-

vated Railroad Company of the rights under the prior ordinances, said transfer having been made August 30, 1892, as alleged in said bill. Exhibit "D" to the bill was an ordinance dated May 15, 1893, authorizing the Lake Street Elevated Railroad Company to construct an elevated road, first, from Lake street to a point on Fullerton avenue between Sheffield avenue and Larrabee street; second, beginning at the main line of the elevated railroad at Market and Lake streets and extending to the south line of Madison street, and also a line of road connecting at the west line of Canal street, extending north; fourth, beginning at the main line on Lake street, within 750 feet of Halsted street, and running in a southerly direction to the city limits; fifth, also commencing at a point on the main line on Lake street between Hamlin avenue and Forty-first avenue on the west, extending in a southerly direction to the south line of Madison street; sixth, also commencing at a point on the main line on Lake street between Rockwell street on the east and California avenue on the west and extending northerly to Diversey street, then to the city limits. The sections of the foregoing ordinance, and other ordinances offered in evidence that are material, will be referred to later. The bill further alleged that after the acceptance of said ordinances defendant constructed an elevated railroad on Lake street from Canal street west to the limits of the city of Chicago, and from Canal street east to Wabash avenue, in accordance therewith, and has maintained and operated cars upon said elevated railroad, carrying passengers for hire therein, and has enjoyed the profits and emoluments of so operating said elevated railroad down to the present time; that in and by the aforesaid ordinances it was provided that the defendant should pay to the city of Chicago an annual license fee of $50 for each and every car used by it in transporting passengers for hire, and that at the time of said payments it should file with the city collector an affidavit, subscribed and sworn to by the president or other officer of said company,

stating the number of cars so used, and that upon such pay-
ment being made a license should be issued as other licenses
are issued, and that each license should contain the number
of the car for which the same is paid, and that such license
should be posted by the company inside the car so licensed;
that the defendant, though often requested, has refused and
failed to file with the city collector the affidavits required,
as aforesaid; that the defendant has not paid to complain-
ant the sum of $50 for each and every car used by it in
transporting passengers for hire; that the defendant used
in transporting passengers for hire large numbers of cars
for which it did not pay to complainant car license fees as
by the terms of said ordinances provided; that the exact
number of cars used by the defendant during each of said
years is unknown to complainant, and that the said defend-
ants, its officers and agents, are the only persons having full
knowledge thereof; that the complainant is not able to state
the full amount which is due to complainant on account of
said car license fees and has no means of ascertaining the
same except from said defendant, its officers and agents,
and that said defendant, its officers and agents falsely claim
and pretend that there is not any sum due to complainant
on account of car license fees. The bill prays that the de-
fendant may be required to answer the bill of complaint
and may especially answer and set forth how many cars
were used by the Chicago and Oak Park Elevated Railroad
Company (formerly known as the Lake Street Elevated
Railroad Company) since its organization in transporting
passengers for hire, the date upon which it took possession
of said cars, and which of said cars have been used for the
purpose of transporting passengers for hire in each of the
years from 1894 to the date of filing the amended and sup-
plemental bills, and that the defendant may be required to
pay complainant the sum that may be found due.

Defendant's answer to the amended and supplemental
bills admits the passage of the two ordinances of Novem-

261 — 31

ber 24, 1890, and the acceptance thereof, as alleged in complainant's bill; admits that on the 30th day of August, 1892, the Lake Street Elevated Railway Company transferred to the defendant the interest, which it had in the two ordinances last referred to; admits the passage of the ordinance of December 19, 1892, as alleged; admits that on the 15th of May, 1893, an ordinance was passed by the city and accepted by the defendant as alleged; admits that after the acceptance of the ordinances mentioned it constructed an elevated railroad in Lake street from Canal street to the city limits, and also from Canal street to Market street, and on Market street from Lake street to Madison street; that it afterwards constructed an elevated railroad on East Lake street from Market street to Wabash avenue; denies that any of its road on East Lake street from Market street to Wabash avenue was constructed under any of the ordinances above set forth. The answer further alleges the passage by the city council of the city of Chicago of an ordinance on the first day of October, 1894, granting authority to the defendant to construct a line of railroad connecting at the east line of Market street extended north, with the line of road then constructed and operated by the defendant, and extending thence east upon Lake Street to the east line of Wabash avenue, which ordinance was accepted by defendant; alleges that the line of railroad on Lake street from Wabash avenue westwardly to North Fifty-second avenue was constructed and is operated under the ordinances passed November 24, 1890, December 19, 1892, May 15, 1893, and October 1, 1894, and alleges that all of said ordinances have remained since their enactment, and still are, in full force and effect; alleges that by the terms of the ordinance of October 1, 1894, the defendant was required to file an affidavit stating the number of cars in regular use by it whereupon it should pay an annual license fee of $50, in advance, for each of its cars used in transporting passengers for hire, and that the payment of said license fee should be

in lieu of all other license fees required to be paid by said company under any other ordinances theretofore passed by the city. The answer denies that the defendant had not filed the affidavits of its officers showing the number of cars used in transporting passengers for hire; alleges that each year after 1894 the defendant filed with the city collector an affidavit stating the number of cars in regular use in transporting passengers for hire; denies that it has not paid to the complainant the sum of $50 for each and every car used by it in transporting passengers for hire prior to the year 1895; alleges that it paid all sums that were due under the provisions of the said ordinances; denies that during each of the years beginning with 1894 and ending with 1908 it should have paid to the complainant for annual car license fees sums largely in excess of the aforesaid amounts, and it denies that during each of said years it used in transporting passengers for hire many cars which at the rate of $50 per car entitled the complainant to sums largely in excess of the amounts aforesaid; states that the several sums of money paid to the city by the defendant, as above set forth, were paid and tendered by the defendant to the city in full satisfaction and discharge of all moneys due to said city of Chicago from the said defendant for car license fees under the terms of the various ordinances above set forth, and under which the defendant then operated, and now operates, its railroad. The defendant further stated in the answer that the city of Chicago has never, from the time of the passage of the ordinance of October 1, 1894, until shortly before the bill was filed herein, claimed that the defendant should pay any license fees on its cars except on such as were in regular use in transporting passengers, and the defendant has not, ever since said time, paid any license fees on cars except on such as were in regular use as aforesaid. It is further set up and claimed in the answer that the complainant cannot, in any event, recover from the defendant any sum for additional car license fees for any

year prior to the year beginning May 1, 1896, for the reason that the alleged cause of action therefor did not accrue to the complainant at any time within ten years prior to the filing of the bill of complaint herein, and that by reason of the *laches* of the complainant in prosecuting its alleged cause of action it should be denied any relief whatever. Replication was filed to the answer, and the cause was referred to a master in chancery to take the proofs and report the same, together with his conclusions of fact.

Upon a hearing the chancellor rendered a decree denying the relief sought and dismissing the bill for want of equity, and finding that section 12 of the ordinance of October 1, 1894, is inconsistent with the sections of the other ordinances set out in the bill of complaint providing for the payment of car license fees, and that the ordinance of October 1, 1894, completely revised the payment of car license fees, and was intended by both the city and the railroad company to operate as a rescission and annulment of the provisions with reference to car license fees contained in the ordinances passed prior to October 1, 1894, and as a substitute therefor. The court further found and decreed that none of the provisions of said ordinances passed prior to October 1, 1894, with reference to the payment of car license fees, have been in force or effect since the acceptance of said ordinance passed October 1, 1894, and that the only ordinance provision now existing, or that has existed since October 1, 1894, with reference to the payment of car license fees, is that set forth in section 12 of the said ordinance passed October 1, 1894.

The city of Chicago appealed to the Appellate Court for the First District, which reversed the decree of the circuit court and ordered said cause remanded, with directions to enter a decree finding that the railway company was indebted to the city for annual car license fees accruing May 1, 1896, and subsequent thereto, (those accruing prior being tolled by the Statute of Limitations,) for an amount

equal to the difference between the number of cars used for the transportation of passengers for hire and the number of cars in regular use each year which was shown by the evidence and admitted.   The case has been brought to this court by writ of *certiorari.*

No cross-errors have been assigned, and counsel for the defendant in error are asking that the judgment of the Appellate Court be affirmed.   The amount to be paid by the plaintiff in error company, if anything, is not disputed. The only questions before this court, therefore, are whether or not the Appellate Court is right in its interpretation and construction of the ordinances in question, and the consequent effect of such ordinances on the subject of car license fees to be paid by plaintiff in error.

It is the contention of plaintiff in error (1) that the ordinance of October, 1894, granting the right to construct that portion of the road from Market street to Wabash avenue, by the terms of which it was required to pay a license fee of $50 for each car in regular use, is repugnant to the license provisions of the ordinances of November 24, 1890, and the ordinance of December 19, 1892, and revised or in effect repealed the sections fixing licenses of the ordinances of November 24, 1890, and the ordinance of December 19, 1892, under which the company was to pay an annual license fee of $50 for each car used by said company in the transportation of passengers for hire; (2) that the city collector having for many years since May 1, 1895, collected license fees on the cars in regular use and only on such number of cars as are shown by the statements and affidavits of the officers of plaintiff in error, the city has been guilty of *laches,* and also that the city is now estopped from collecting license fees according to the terms of the ordinances of November, 1890.

Defendant in error claims that the ordinance of October 1, 1894, while it enabled the company to build a part of its road, was a grant to enable the company to build a

road which might or might not be independent of other portions of its line; that the car license provisions of the ordinance of October 1, 1894, only apply to the portions of road constructed under that ordinance if used as an independent line, and the license provisions of the ordinances enacted prior to October 1, 1894, are still in force.

In the ordinance of November 24, 1890, (set out as exhibit "A" to the bill of complaint,) section 1 is as follows: "That subject to the conditions, provisions and limitations hereinafter set forth, permission and authority be and the same are hereby given to the Lake Street Elevated Railway Company, its successors and assigns, to build, construct, operate and maintain an elevated structure and place thereon a double track on Lake street, commencing at the east line of Crawford avenue and extending west to the city limits, and commencing at the west line of Canal street and extending east to the east line of Market street."

Section 21 is as follows: "On the first day of May in each year said company shall pay to the city of Chicago an annual license fee of fifty ($50) dollars for each and every car used by said company in transporting passengers for hire, and at the time of said payment said company shall file with the city collector an affidavit, subscribed and sworn to by its president or other officer of said company, stating the number of cars so used by said company. Upon such payment being made the city clerk shall issue a license to said company for each of its cars so used, which license shall be issued as other licenses are issued, and each license shall contain the number of the car for which the same is paid, and which license shall be posted by said company in some conspicuous place inside of each car so licensed and shall correspond in number to that of the said car: *Provided, however,* that such cars shall not already be liable for the payment of a license fee by virtue of any other ordinance granted to said company, its successors or assigns."

In the other ordinance dated November 24, 1890, (exhibit "B" to the bill of complaint,) authorizing the construction of a railroad from the west line of Canal street to Crawford avenue, section 18 of the ordinance contains the same provision as to payment of car license fees as section 21 of the ordinance exhibit "A," except the last proviso. As to this proviso in section 21 of the ordinance exhibit "A," this ordinance and the ordinance exhibit "B" were both enacted on the same day, and it would seem, as contended by counsel for defendant in error, that the proviso was inserted in view of the other ordinance having the same provision as to car license fees. The portion of the road authorized by the ordinance exhibit "B" filled in the gap between the two portions authorized under the ordinance exhibit "A." In fact, section 26 of the ordinance exhibit "A" provides: "This ordinance shall be taken and construed to include the elevated railway authorized to be constructed on Lake street from Canal street to Crawford avenue, and not as authorizing another elevated railway over the same structure." The proviso was simply to provide that a double license fee should not be charged.

The ordinance of May 15, 1893, (exhibit "D" heretofore referred to,) contains in section 12 the same provisions as to car license fees as are contained in section 18 of the ordinance last mentioned as exhibit "B."

The preamble and material parts of the ordinance of October 1, 1894, authorizing the construction of a road from Market street to Wabash avenue, are as follows:

"Whereas, there has been presented to and is now on file with the city council petitions of property owners fronting on Lake street between Market street and Wabash avenue, representing out of a total frontage of 4514 feet 2468.15 feet, consenting to the construction and operation of an elevated railroad upon said Lake street between Market street and Wabash avenue; now, therefore,

"*Be it ordained by the city council of the city of Chicago:*

"Sec. 1. That permission be and the same is hereby given and granted to the Lake Street Elevated Railroad Company, a corporation, under the laws of the State of Illinois, to construct, maintain and operate, for the period of fifty years from and after the passage hereof, an elevated railroad with two (2) tracks, and such curves, side-tracks, switches, sidings, turn-outs, connections, supports, columns, girders, telegraph, telephone, signal and other devices as the said company may in like manner deem necessary for operating its road along and upon the following route in the city of Chicago, to-wit: A line of road connecting at the east line of Market street, extended north, with the line of road now constructed and operated by said company on Lake street, thence extending east upon Lake street to the east line of Wabash avenue, subject, however, to the provisions hereinafter contained.

"Sec. 4. * * * All trains operated by said company over its line of road passing over the Lake street bridge eastwardly shall at least alternately continue eastwardly over the line of road hereby authorized, and in case said company shall hereafter obtain the right to build or use a loop line for running its trains, then all its trains proceeding eastwardly over Lake street bridge shall continue to proceed eastwardly over the elevated railroad hereby authorized, and no trains of said company shall move westwardly over the elevated railroad hereby authorized, between Wabash avenue and Market street, except such trains as have first proceeded eastwardly over the elevated railroad hereby authorized. And it is further provided that in case said company shall build a line of road through the north division of the city of Chicago, then all trains running over such line of road southwardly and connecting with the road hereby authorized shall run eastwardly over the line of road hereby authorized.

"Sec. 5. * * * Said company shall locate stations at the following streets along the line of said road, viz.: Fifth avenue, Clark street and State street.

"Sec. 12. On the first day of May, 1895, and on the first day of May of each year thereafter, said company shall file with the city collector, or other proper officer whose duty it is to collect license fees, an affidavit stating the number of cars in regular use by said company, and thereupon said company shall pay an annual license fee of $50, in advance, for each and every car in regular use by it in transporting passengers for hire. Upon such payment being made the city clerk shall issue a license to said company for each of its cars so used, the payment of which said license fee shall be in lieu of all other licenses to be imposed as regards the line of road hereby authorized by the city of Chicago.

"Sec. 16. That the line of road heretofore authorized to be built by said company under ordinance passed December 19, 1892, and under the ordinances of November 24, 1890, being the line of road from Market street to Fifty-second avenue upon Lake street, be and the same is hereby approved as in compliance with said ordinances, and that the time for said company to complete the building and construction of the remaining portion of its line of road as heretofore authorized by the two ordinances of November 24, 1890, and the ordinance passed December 19, 1892, be and the same is hereby extended to July 1, 1897, and the other provisions of the said ordinances are hereby reenacted and extended."

In what is known as the Union Consolidated Elevated Railway Company ordinance, passed June 29, 1896, section 2 provides for the joint use of the tracks of the present loop by the Northwestern Elevated Railroad Company, the Lake Street Elevated Railroad Company, Metropolitan West Side Elevated Railroad Company, South Side Rapid Transit Railroad Company and the Union Elevated Rail-

road Company upon such terms as have been agreed upon under any and all contracts now existing between the companies last above named or such contract or contracts as may hereafter be entered into between the said companies or any of them. Section 14 provides that said company shall pay an annual license fee of $50 for each and every car belonging to said company used in transporting passengers for hire, and at the time of said payment said company shall file with the city collector an affidavit, sworn to by its treasurer or other officer, if required by the city collector, stating the number of cars so used by said company. Upon such payment being made the clerk shall issue a license for each of its cars so used, and each license shall contain the number of the car for which the same is paid, and which license shall be posted by said company in some conspicuous place inside of each car so licensed. The rights and privileges granted to the Lake Street Elevated railroad in reference to the elevated road upon Lake street from Market street to Wabash avenue, and upon Wabash avenue from Lake street to Harrison street, and upon Fifth avenue from Lake street to Harrison street, are hereby re-adopted and confirmed, one of the ordinances referred to being the one passed on October 1, 1894, granting certain rights and privileges to the Lake Street Elevated Railroad Company. Section 18 provides that the rate of fare for a continuous ride on the loop of the Union Elevated railroad and any one of the lines of the railroads which shall use the tracks of the said Union Elevated railroad shall be not more than five cents.

Plaintiff in error introduced in evidence, over the objection of counsel for the city, certain proceedings of the council showing reports of the city comptroller as to the amounts he collected, from time to time, from the plaintiff in error on account of car license fees. None of the receipts for the amounts paid were signed by the city collector in person but by some person employed in his office.

It further appears from the evidence that the city collectors of the period when these license fees were collected were not acquainted with the terms of the various ordinances above set out and never empowered the employees who received such license fees as were paid, to compromise or settle any claims the city had against plaintiff in error. It does not appear that any of the city authorities had any knowledge of the number of cars actually in use by plaintiff in error.

The car license provisions of the two ordinances of November 24, 1890, and the ordinance of December 19, 1892, under which by far the greater portions of the Lake street line of the railroad of plaintiff in error were built, were never expressly repealed. On the contrary, the ordinance of October 1, 1894, expressly provides in section 16 above set out, that "the line of road heretofore authorized to be built by said company under the ordinance passed December 19, 1892, and under the ordinances of November 24, 1890, being the line of road from Market street to Fifty-second avenue upon Lake street, be and the same is hereby approved as in compliance with said ordinances, and that the time for said company to complete the building and construction of the remaining portion of its line of road as heretofore authorized by the two ordinances of November 24, 1890, and the ordinance passed December 19, 1892, be and the same is hereby extended to July 1, 1897, *and the other provisions of said ordinances are hereby re-enacted and extended.*" This would seem to show that whatever the effect of the ordinance of October 1, 1894, and even if the above language would not amount to a saving clause, it was clearly not the intent of the city council by the enactment of the ordinance of October 1, 1894, to repeal any of the car license provisions of the other ordinances.

The rules for the construction of ordinances of municipal corporations are the same as for statutes enacted by the legislature. (*Illinois Central Railroad Co.* v. *City of Chi-*

*cago,* 169 Ill. 329; *Stanton* v. *City of Chicago,* 154 id. 23.) It is a well settled principle of law that repeals by implication are not favored. (*People* v. *Raymond,* 186 Ill. 407.) Statutes will be so construed as to avoid the repeal, by implication, of one act by a subsequent enactment if such repeal can be avoided by any reasonable hypothesis. (*Village of Ridgway* v. *County of Gallatin,* 181 Ill. 521, and cases cited; *Hunt* v. *Chicago Horse and Dummy Railway Co.* 121 Ill. 638.) Though two acts are seemingly repugnant, they should, if possible, be so construed that the later act may not operate as a repeal of the earlier by implication. (*People* v. *Raymond, supra.*) If the sections shown are susceptible of two constructions, one of which will support and the other defeat the statute or ordinance, the former will be adopted. (*Berry* v. *City of Chicago,* 192 Ill. 154; *Harmon* v. *City of Chicago,* 140 id. 374.) Ordinances granting the right to construct and operate a street railway system are to be construed most strictly against the grantee. *Blocki* v. *People,* 220 Ill. 444.

It is true that the ordinance of October 1, 1894, contains a provision as to the payment of car license fees different from the other ordinances, but that, alone, does not make such provisions conflicting or repugnant to the prior ordinances. To be conflicting or repugnant they must be opposed to the subject matter of such prior ordinances in such a way that either the prior ordinances or the later ordinance cannot stand. These ordinances must be taken as they are worded, and interpreted according to the language used, and reconciled, if possible. We cannot assume that conditions existed or were contemplated outside of what is actually shown by the record in this case, nor can we assume with certainty that the various ordinances were enacted in contemplation of a continuous line of railroad, whereon each car would travel the entire length of the road constructed in sections, under different franchises. Plaintiff in error accepted the ordinances as passed. In constru-

ing these ordinances in this light, what was the situation at the time the ordinance of October 1, 1894, was enacted? The plaintiff in error company had constructed, or partially constructed, under the ordinances of November 24, 1890, and the ordinance of December 19, 1892, a line of railroad from the western city limits to Market street. The ordinance of October 1, 1894, authorized the construction of a line of road on Lake street from Market street to Wabash avenue. Under the rules of construction of statutes and ordinances we do not think a careful reading of the ordinance of October 1, 1894, will bear the construction contended for by plaintiff in error.

Counsel for plaintiff in error assumed in the statement of the case that the ordinance of October 1, 1894, granted the Lake Street Elevated Railroad Company the right *to extend* its Lake street line of road. Most of the argument is based on this assumption. The ordinance did not grant the right *to extend* a road. It did grant the right *to build* a line of road. The words in section 1, "a line of road connecting at the east line of Market street extended north, with the line of road now constructed," etc., merely fix the starting point of the road. The purpose of the ordinance, as shown in the preamble and all through the ordinance, was to enable the company to construct the road described in the ordinance and fix the conditions under which such road should be operated, and not to revise the license fees for the entire system. The ordinance, by its terms, provides for a road complete in itself, and refers only to *the line of railroad hereby authorized,* and the car license provisions of the ordinance provide that the license imposed of $50, in advance, for each car in regular use, "shall be in lieu of all other licenses to be imposed, as regards *the line of road hereby authorized,* by the city of Chicago." The only road authorized by the ordinance was the line from Market street to Wabash avenue, and such road is treated as separate and distinct from the other portions of the road all through the

ordinance. The ordinance of October, 1894, authorized the construction of a road that, for all the ordinance shows, can be operated as a separate and distinct line, and if so operated, then, under the ordinance, the company will only be liable to pay a license .fee for each car in regular use on that line. Conditions have changed, and the plaintiff in error company is probably operating its road in connection with other lines in a different manner and more advantageously, in many respects, than it contemplated doing when the ordinances were enacted and the road built, but in construing these ordinances we must take the conditions that obtained at that time. If the road authorized by the ordinance of October 1, 1894, had never been built or had not been built within two years of the passage of the ordinance as provided, then the privileges granted by the ordinance were forfeited. Had the intention been to revise the license fees for the entire road, it is probable such revision would not have been left in this uncertain condition. It may all be true, as counsel for plaintiff in error contend, that the same cars of plaintiff in error which run on the portion of its line between Wabash avenue and Market street also run on the rest of the line from Market street west,—that is, that the cars which run on the portion of the road constructed under the ordinance of October 1, 1894, continue on that portion of the road constructed under the prior ordinances. .If so, why should such cars not be subject to the terms and provisions of the ordinances of November 24, 1890, including the license fee of $50 a year for each and every car used in transporting passengers for hire?

Much stress is laid on the portion of section 4 of the ordinance of October, 1894, as follows: "All trains operated by said company over its line of road passing over the Lake street bridge eastwardly shall at least alternately continue eastwardly over the line of road hereby authorized, and in case said company shall hereafter obtain the right to build or use a loop line for running its trains, then all

trains proceeding eastwardly over Lake street bridge shall continue to proceed eastwardly over the elevated railroad hereby authorized, and no trains of said company shall move westwardly over the elevated railroad hereby authorized, between Wabash avenue and Market street, except such trains as have first proceeded eastwardly over the elevated railroad hereby authorized." There is nothing in the first provision of this section to compel the company, in its operation of the road west of the river, to run its cars east of the Lake street bridge, but if it did cross the Lake street bridge, then it was to run at least the alternate trains through to Wabash avenue over the portions of road authorized by the ordinance. The other provisions of the ordinance provided that if the company built or used a loop line, then all the trains that came eastwardly over the Lake street bridge should continue eastwardly over the road built under that ordinance; and further, in the event the trains come over the bridge, no trains of the said company should move westwardly over the elevated road thereby authorized, between Wabash avenue and Market street, except such trains as have first proceeded eastwardly over the elevated road hereby authorized. A further provision follows in regard to running trains in case the company should build a line through the north division of Chicago. All these later provisions related to conditions not in existence at the time the ordinance was passed, and in any event, as will be seen by reading the ordinance carefully, there was nothing to compel the company to run any trains over the Lake street bridge, but merely required it, if it did, to do certain things which would be of as much advantage to the road as to its patrons. We agree with counsel for plaintiff in error that it is a question of cars, and if such cars run on the portions of the road constructed under the ordinance of November 24, 1890, then such cars, and any other cars running on such portions, must pay a license fee as provided by those ordinances, not because they run on that line,

but because they are owned by the same company that built and operates the portion of the road under those ordinances, and under the provisions of those ordinances the company must pay a license fee for every car used by it on that road for the transporting of passengers for hire. If the company pays, under the ordinances of 1890, for *all* cars in use, that would include the cars in regular use, and it would not pay any other license fees under the ordinance of October, 1894, as the cars are now operated. When the ordinances are thus construed they are not repugnant or conflicting. We do not think the city council of Chicago, by the enactment of the ordinance of October 1, 1894, intended to repeal the car license provision of the ordinance of November 24, 1890, and the ordinance of December 19, 1892, nor that the car license provisions of the ordinance of October 1, 1894, are so conflicting with and repugnant to the car license provisions of the prior ordinances that such provisions of the prior ordinances cannot be enforced.

We hold that the car license provisions of the ordinances of November 24, 1890, and December 19, 1892, are still in force, and that the plaintiff in error company is still required to pay the car license fees imposed by those ordinances as long as it is operating cars on the roads constructed under those ordinances, notwithstanding the fact that the cars also run on a road which was built under an ordinance providing for different license fees, which fees, under the circumstances, are included in the fees paid under the prior ordinances; that the effect of the ordinance of October 1, 1894, is merely this: that if the line constructed under that ordinance is operated as an independent line, then it will only be required to pay the annual license fee of $50 on each car in regular use on that line.

Plaintiff in error insists that the provisions of the several ordinances fixing car license fees are to be regarded as contracts made and entered into by the city in its proprietary capacity, and not in its governmental capacity affect-

ing the rights of the public. As we regard the sections of the ordinances in question, the same rule of construction should be applied.

Plaintiff in error claims that the city has been guilty of *laches*. Without discussing the question whether this defense is available against a municipal corporation, the plaintiff in error has been given the benefit of the Statute of Limitations as to a part of its claim by the Appellate Court, and that must stand, as no cross-errors have been assigned.

. As to the other point urged by the plaintiff in error, while it is true that the city, ever since the passage of the ordinance of October, 1894, has collected license fees only on the cars in regular use for which the officers of the plaintiff in error company made affidavits, there is no reason why the city is estopped, in law, from collecting that which is lawfully its due. The doctrine of estoppel as applied to the case at bar is, that the city, by representations of its officers or by taking the position it did with reference to payment of the license fees with a knowledge of the facts, induced or caused the plaintiff in error, it being ignorant of the facts, to change its position or act to its prejudice. The claim of the city in the case is simply that the plaintiff in error has paid less than it should have paid under the ordinances in question, and it is suing for an accounting. The mere failure of the officers of a municipal corporation to assert a right does not work an estoppel *in pais*. Before such doctrine can be invoked there must have been some positive acts by the municipal officers which may have induced such action of the adverse party, and whereby it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done. (*Board of Supervisors of Logan County* v. *City of Lincoln,* 81 Ill. 156; *Washingtonian Home* v. *City of Chicago,* 157 id. 414.) Plaintiff in error was not misled or induced to make any change, so far as shown by the record, and .it is difficult to imagine how it has been prejudiced in any

261 — 32

way. It has simply failed to pay, and the city has failed to receive, what the railroad company should have paid in license fees. The city collector had no authority to bind the city without action by the city council, and no action of the city collector was such as to bind the city. Someone in his office accepted the statements made by the officers of the plaintiff in error company and receipted for the amounts which the company chose to pay. If the city council, with full knowledge of the facts, had authorized the acceptance of such fees as were paid in settlement of the controversy the situation would be different.

For the reasons given, the judgment of the Appellate Court reversing the decree of the circuit court and ordering said cause remanded to the circuit court of Cook county, with directions to enter the decree ordered by the Appellate Court, is affirmed.                    *Judgment affirmed.*