THE PEOPLE *ex rel.* Mary J. Dougherty *et al.* Appellants, *vs.* THE CITY OF ROCK ISLAND, Appellee.

*Opinion filed December 15, 1915—Rehearing denied Feb. 3, 1916.*

1. CONSTITUTIONAL LAW—*general rule as to power of legislature to enact curative laws.* The only limitations upon the power of the legislature to enact curative laws to validate irregular or void proceedings of municipal corporations are, that the action ratified and confirmed must be one which it was lawful for the legislature to authorize in the first instance, and that the power must be so exercised as not to infringe upon or divest property rights and vested interests.

2. SAME—*the act of 1915, to cure defective annexation proceedings, is not invalid as special legislation.* The curative act of 1915, (Laws of 1915, p. 258,) which was passed for the purpose of validating annexation proceedings under the circumstances set forth in the act, is not invalid as being special legislation, as the act purports to be general and applies to all municipal corporations which have annexed territory under the circumstances set forth in the act.

3. MUNICIPAL CORPORATIONS—*what defect in annexation proceeding is cured by act of 1915.* The act of 1915 (Laws of 1915, p. 258,) is effective to cure a defect in an annexation proceeding

under section 2 of the act of 1872, consisting of a failure to have a petition complying with the requirement of section 1 of said act in respect to the number of signatures of legal voters· and property owners, as it was within the power of the legislature, in the first instance, to ha've dispensed with such requirement.

4. SAME—*municipal corporations are wholly subject to legislative control.* The legislature not only has the power to determine the territory and boundaries of municipal corporations, but also to change or alter them by annexing or disconnecting territory, either with or without the consent of the corporate authorities of the municipality or the inhabitants of the territory affected.

5. SAME—*sections 1 and 2 of act of 1872, concerning annexation, are in force.* The fact that sections 4 to 8 of the act of 1872, concerning the annexation of territory to cities, towns and villages· and the uniting of cities, towns and villages, were held invalid by the Supreme Court in *City of Galesburg* v. *Hawkinson,* 75 Ill. 152, did not invalidate sections 1 and 2 of said act, as they relate to an entirely different purpose than do sections 4 to 8, and said sections 1 and 2 are therefore in force.

6. SAME—*section 2 of act of 1872 was not repealed by the act of 1889.* Section 2 of the act of 1872, providing a method by which one municipal corporation may be annexed to another on the initiative of the municipal authorities, was not repealed by the act of 1889, providing a method of annexation upon the initiative of the legal voters of the municipalities affected, as the two acts are distinct and not in conflict.

7. SAME—*curative act of 1915 cures defects in· election due to form of ballots.* The curative act of 1915 (Laws of 1915, p. 258,) is sufficiently broad in its terms to cure a defect in an annexation election, arising from the fact that the ballots used were not in the form prescribed by the Ballot act.

8. SAME—*when ordinance passed by city in view of annexing village will not be held void.* An ordinance passed by a city in view of the annexation of a village, which provides for the making of certain improvements by the city, will not be held void so as to defeat the annexation proceeding unless it provides for the doing of things the city would have no power to do, and it is not fatal to the ordinance that difficulties may be encountered in carrying its provisions into effect.

9. SAME—*city has power to agree to pave a street.* A city may, in view of the annexation of a village by the city, agree, by ordinance, to pave a certain street by special assessment and bear a certain portion of the expense, even though the power to originate an improvement rests with the board of local improvements,

and though the matter of adjusting the benefits to property assessed will have to be left until the improvement is made.

10. SAME—*what does not render pre-annexation ordinance invalid.* The fact that the improvements which a city agrees to construct in an ordinance passed with a view to the annexation of a village may require the city at some future time to incur an indebtedness which will require the authority of an appropriation ordinance does not render the ordinance void, particularly where it was ratified and approved at an election called for that purpose.

CARTWRIGHT and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Rock Island county; the Hon. WILLIAM T. CHURCH, Judge, presiding.

FLOYD E. THOMPSON, State's Attorney, (SEARLE & MARSHALL, of counsel,) for appellants.

JOHN K. SCOTT, City Attorney, (WILLIAM McENIRY, of counsel,) for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

An information in the nature of *quo warranto* was filed June 30, 1915, in the circuit court of Rock Island county by the State's attorney of that county, on the relation of Mary J. Dougherty and ten other citizens, residents and legal voters of Rock Island township, in that county, against the city of Rock Island, requiring it to show by what warrant it assumed jurisdiction over certain territory alleged to be included within its corporate limits by virtue of certain proceedings had for the annexation of the village of Sears, in that county, to the city of Rock Island. Process ordered issued but was not served, as the city entered its voluntary appearance and filed three pleas in justification of its action. The relators filed a general and special demurrer to each plea, which the court sustained to the first and third pleas and overruled as to the second plea. The city elected to abide by its first and third pleas and the relators by their demurrer to the second plea, and

the court thereupon entered judgment in favor of the respondent and dismissed the information and entered judgment against the relators for costs. This appeal followed.

Appellants assign as error the overruling of the demurrer to the second plea, and appellee assigns as cross-error the sustaining of the demurrer to its first and third pleas. In view of the conclusions we have reached it will be unnecessary to consider the cross-error assigned by appellee.

The pleas filed are voluminous, and we shall only set forth so much of the facts alleged in the second plea as is necessary to a proper understanding of the legal questions raised by the assignments of error and discussed in the briefs of the respective parties.

The second plea filed by respondent sets up that prior to December, 1914, the city of Rock Island and the village of Sears, in Rock Island county, were separated by a narrow strip of land which was quite thickly populated; that on December 14, 1914, a petition was filed with the president and board of trustees of the village of Sears which alleged that it was signed by a majority of the legal voters who were a majority of the property owners in said territory, that the said territory was contiguous to the village of Sears and not embraced within its limits or the corporate limits of any other city or village, and prayed that the village take such action in the premises that such territory may be annexed to the village of Sears; that the village authorities passed an ordinance reciting that said petition contained the signatures of a majority of the legal voters and property holders of said territory and provided for a special election to be held on January 4, 1915, to vote upon the proposition of annexing said territory to said village; that such election was held, and resulted in the proposition being carried by a majority of all the legal votes cast at said election; that on January 6, 1915, the village of Sears, by its proper officers, adopted an ordinance declaring the territory annexed to the village, and ordered that the plat

of such added territory be filed for record and recorded in the recorder's office of Rock Island county, which was done pursuant to law; that thereafter, on March 27, 1915, the city council of the city of Rock Island and the president and board of trustees of the village of Sears, each, by two-thirds vote of all of the duly elected and qualified aldermen and trustees of the respective municipalities, adopted an ordinance providing for the annexation of the village of Sears to the city of Rock Island, known as the "Union ordinance," which was submitted to the voters of the respective municipalities at the general election held on the third Tuesday in April, 1915, at which a majority of the legal votes cast in each of those municipalities were in favor of such ordinance and the annexation of the village of Sears to the city of Rock Island, and such further proceedings were subsequently had by the city council of Rock Island and the president and board of trustees of the village of Sears, respectively, that said village was declared duly annexed to the city of Rock Island.

The validity of the annexation of the village of Sears to the city of Rock Island is questioned on several grounds. It is first insisted that the territory lying between these two municipalities was never legally annexed to the village of Sears, and that for this reason the attempted annexation of the village of Sears to the city of Rock Island was without authority of law and its annexation illegal and void. The proceedings for the annexation of the territory in question to the village of Sears were attempted to be had under the provisions of section 1 of the act of 1872, as amended in 1913, entitled "An act to provide for annexing and excluding territory to and from cities, towns and villages and to unite cities, towns and villages," approved April 10, 1872, and in force July 1, 1872. (Hurd's Stat. 1913, p. 321.) It is admitted that this petition was not signed by a majority of the legal voters and by a majority of the property owners in the territory proposed to be annexed, as provided in

that section, but appellee insists that this defect was remedied by the curative act passed by the Forty-ninth General Assembly, approved June 4, 1915, entitled "An act to legalize the annexation of any incorporated city, village or town, and the territory comprising such city, village or town, annexed to another incorporated city, village or town, under section 2 of an act entitled 'An act to provide for annexing and excluding territory to and from any village, city or town, and to unite cities, towns and villages,' approved April 10, 1872, in force July 1, 1872." Said act consists of one section, and is as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That whenever the inhabitants of any incorporated city, village or town, and the inhabitants of any other incorporated city, village or town, possessing all the legal qualifications therefor, having in good faith attempted to annex any incorporated city, village or town, and the territory comprising such city, village or town, to another incorporated city, village or town, under and in pursuance of section 2 of an act entitled, 'An act to provide for annexing and excluding territory to and from cities, towns and villages, and to unite cities, towns and villages,' approved April 10, 1872, in force July 1, 1872, and having complied with all the requirements of said section 2, although the said incorporated city, village or town so annexed may not be lawfully organized as such city, village or town, in part or in its entirety, by reason of defective prior annexation proceedings or otherwise, such incorporated city, village or town, and the territory comprising such city, village or town in its entirety is hereby declared to have been legally and validly annexed to the other incorporated city, village or town." (Laws of 1915, p. 258.)

The appellants insist that this statute did not cure the defects in the annexation proceedings, for the reason that a petition signed by the requisite number of legal voters

271 – 27

and property owners in the territory proposed to be annexed is essential to give the corporate authorities jurisdiction to act in the premises, and that without such a petition all proceedings had of that character are null and void and can not be validated by a curative statute; that the legislature is powerless to give validity to a void act by a curative statute. The power of the legislature, by curative or remedial acts, to validate irregular or void proceedings of municipal corporations is well established by the authorities. Cooley, in his work on Constitutional Limitations, (6th ed. p. 457,) states the rule as follows: "If the thing wanted or failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute; and if the irregularity consists in doing some act or in the mode or manner of doing some act which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by subsequent law." To the same effect are 7 Cyc. 765, *Town of Fox* v. *Town of Kendall,* 97 Ill. 72, *Blake* v. *People,* 109 id. 504, and *Steger* v. *Traveling Men's Building Ass'n,* 208 id. 236. The only limitation upon the power of the legislature in this respect seems to be that the act ratified and confirmed must be one which it was lawful for the legislature to authorize in the first instance, and that the power be so exercised as not to infringe or divest property rights and vested interests of persons which are secure against such legislative action. In *Town of Fox* v. *Town of Kendall, supra,* we held that the legislature might cure defects in an illegal election held in a county to vote upon the question of township support of paupers. In that case the question was submitted to the voters of the county before the law providing for the submission of such question became a law, and it was held that this defect might be cured by a subsequent curative act passed in 1871, which provided

that where counties had voted for the support of paupers by townships and acted in good faith for the period of five years under the authority of such vote, the acts of such counties and townships should be deemed legal and binding notwithstanding any informalities in the time or manner of holding such elections or in recording or preserving the records of the same. The ground of the decision is, that as the General Assembly might have enacted such a law and made it operative without submitting the question to a vote of the county, it could cure the defect of an illegal vote on such proposition by a curative or retrospective law validating what had been done pursuant to such illegal election. In *Steger* v. *Traveling Men's Building Ass'n, supra,* we held the legislature might validate void and illegal acknowledgments of deeds, as between the immediate parties, by a curative statute, although such statute could have no such effect as against subsequent *bona fide* purchasers who acquired title relying upon the invalidity of such acknowledgments. It was there said, on page 242 of the opinion: "The legislature might doubtless have provided by a prior law that an acknowledgment could lawfully be taken before an officer or stockholder of a corporation, and the act goes no further than to bind the mortgagor where the acknowledgment is void by reason of personal disability of the officer to take it. The legislature may ratify and confirm any act which it might lawfully have authorized in the first instance, where the defect arises out of the neglect of some legal formality and the curative act interferes with no vested rights.—*United States Mortgage Co.* v. *Gross,* 93 Ill. 483."

In this State municipal corporations, such as cities, towns and villages, are wholly subject to legislative regulation and control. In *True* v. *Davis,* 133 Ill. 522, in speaking of the nature and character of this kind of municipal corporations and the power and jurisdiction of the legislature over the same, we said: "A municipal corporation is purely of legislative creation for local government, in places

where it is presumed the public welfare will be subserved thereby. Our constitution contains no restriction as to the organization of cities, towns and villages or the changing and amending or repeal of their charters, and, consequently, no restriction in respect to uniting or dividing cities, towns and villages or annulling their charters, save only that it cannot be by local or special law but must be by a general law. * * * In the absence of constitutional restriction the legislature may provide for the organizing, uniting, dividing or annulling such corporations, in such manner as it shall deem best to promote the public welfare.—*Morgan* v. *Beloit,* 7 Wall. 613; *Thornton* v. *Abbott,* 61 Mo. 176; *Colchester* v. *Seaber,* 3 Burr. 1866; *Mount Pleasant* v. *Beckwith,* 100 U. S. 514." It follows, as a necessary consequence of this power, that the legislature not only has authority to determine the territory and boundaries of such corporations, but also to change or alter them by annexation or disconnecting territory therefrom, either with or without the consent of the corporate authorities of the municipality or the inhabitants of the territory affected. (28 Cyc. 183, *et seq.*) It will thus be seen the legislature might have provided for the calling of an election to vote upon the question of annexing contiguous territory to cities or villages without any petition whatever by the property owners, or by a petition signed only by a limited number or by a majority of either the legal voters or property owners residing within such territory. The defect in the proceedings complained of, then, is in respect to a matter which might have been dispensed with entirely in the first instance, and the case is brought well within the general rule announced in 8 Cyc. 765, where it is said: "It is a rule of general application that where a defect in a proceeding consists of an omission the necessity for the performance of which the legislature might have dispensed with by prior statute, a subsequent statute dispensing with such performance retrospectively is valid. So, also, if the defect consists

in some act which the legislature might have rendered directory, merely, or immaterial, by prior statute, a subsequent statute designed to have the same effect by validating defective execution is valid."

In our judgment the defects complained of in the proceedings for the annexation of the territory to the village of Sears were cured by the curative act in question.

Neither do we think the act is unconstitutional as special legislation. While its provisions may be applicable to only one city, town or village in the State, it does not purport to apply to one, or even a small number, of such municipalities, but is broad enough in its terms to include all cities and towns in the State in which annexation proceedings have been had under section 2 of the act of 1872. It is therefore not invalid as special legislation. *Town of Fox* v. *Town of Kendall, supra.*

It is further insisted that the attempted annexation of the village of Sears to the city of Rock Island is invalid for the reason that the proceedings were had under the provisions of section 2 of the act of 1872, *supra,* which it is claimed was not in force at the time of the proceedings in question. In support of this contention it is argued that the whole of that act was rendered invalid as the necessary consequence of the decision of this court in *City of Galesburg* v. *Hawkinson,* 75 Ill. 152, holding sections 4 to 8 of that act unconstitutional as an attempt to delegate a legislative power to the courts,—the power to change or alter the boundaries of such municipalities, which is purely a legislative function. The general rule which seems to have been universally adopted by the courts (*People* v. *Olson,* 222 Ill. 117,) for ascertaining whether or not an act is rendered void because it contains one or more unconstitutional provisions is stated by Cooley in his work on Constitutional Limitations, (6th ed. pp. 209, 210,) as follows: "It will sometimes be found that an act of the legislature is opposed in some of its provisions to the constitution, while others,

standing by themselves, would be unobjectionable.  *  *  *
Where, therefore, a part of a statute is unconstitutional,
that fact does not authorize the courts to declare the re-
mainder void unless all the provisions are connected in sub-
ject matter, depending on each other, operating together for
the same purpose, or otherwise so connected together in
meaning that it cannot be presumed the legislature would
have passed the one without the other.  The constitutional
and unconstitutional provisions may even be contained in
the same section and yet be perfectly distinct and separable,
so that the first may stand though the last fall.  The point
is, not whether they are contained in the same section,—
for the distribution into sections is purely artificial,—but
whether they are essentially and inseparably connected in
substance.  If, when the unconstitutional portion is stricken
out, that which remains is complete in itself and capable of
being executed in accordance with the apparent legislative
intent, wholly independent of that which was rejected, it
must be sustained.  The difficulty is in determining whether
the good and bad parts of the statute are capable of being
separated within the meaning of this rule.  If a statute at-
tempts to accomplish two or more objects and is void as to
one, it may still be in every respect complete and valid as
to the other; but if its purpose is to accomplish a single ob-
ject, only, and some of its provisions are void, the whole
must fail unless sufficient remains to effect the object with-
out the aid of the invalid portion."

The objects and purposes of the act of 1872 were two-
fold: First, to provide for the annexing and excluding
of contiguous territory from municipalities, such as cities,
towns and villages; and second, to provide for the an-
nexation or uniting of such municipalities one to another.
Neither object or purpose is in any way dependent upon the
other or upon the method of procedure provided for the ac-
complishment of such other purpose.  It cannot well be said
that the legislature would not have provided for the annexa-

tion of one city, village or town to another without also having provided in the same act for the annexation of contiguous territory to cities, villages or towns in the State, or that the provisions for the annexation of one city, village or town to another are in any way dependent upon or related to the matter of the annexation of contiguous territory to a city, village or town. An examination of the provisions of sections 1, 2 and 3 of that act shows that the objects and purposes sought to be accomplished by each of these sections are entirely separate and distinct, and we think that sections 1 and 2 may stand wholly independent of the provisions of section 3 and the following sections. We are therefore of the opinion that sections 1 and 2 were not rendered invalid as a necessary consequence of the decision of this court in the *Hawkinson case, supra.*

It is next insisted that section 2 was repealed by the act of 1889, providing for the annexation of one ·city to another city, the argument of appellants being that the act of 1889 was a re-codification of the laws upon this subject and covers the same subject matter as section 2 of the act of 1872, which is repealed by the later act, as it expressly repeals all acts or parts of acts in conflict therewith. Repeals by implication are not favored, and in order that a former statute may be repealed by a later act by implication, there must be such a positive repugnancy between the provisions of the new law and the old that both cannot stand together or be consistently reconciled. (*People* v. *Brayton,* 94 Ill. 341.) A repealing clause expressly repealing all laws or parts of laws in conflict with the act adds nothing to the act, as all prior conflicting laws or parts of laws in conflict with the new law are repealed by such law by implication, without such provisions. (*Hoyne* v. *Danisch,* 264 Ill. 467.) The rule is, that where two acts are seemingly repugnant, it is the duty of the court to so construe them, if possible, that the later act may not repeal the former one by implication, and that if two constructions are possible, that one shall

be adopted which will support, and not defeat, the validity of the prior statute. (*City of Chicago* v. *Oak Park Elevated Railroad Co.* 261 Ill. 478; *Hunt* v. *Chicago Horse and Dummy Railway Co.* 121 id. 638.) The procedure for the annexation of one city or village to another provided by the act of 1872 and the procedure by the act of 1889 are entirely separate and distinct and do not conflict one with the other. The act of 1872 provides for the annexation of one incorporated city, village or town to another, on the initiative of the municipal authorities of the municipalities to be affected, by the adoption of an ordinance passed by a two-thirds vote of all of the aldermen or trustees elected from each of the municipalities desiring such annexation, the fixing of the terms of the annexation, and the approval and adoption of such ordinance by a vote of the electors of each of the municipalities proposed to be united, leaving the whole matter of the terms of such annexation entirely within the discretion of the municipal authorities and the electors of the municipalities to be affected by such annexation. The act of 1889 provides that the initiative in such proceedings shall be taken by the legal voters of the municipalities proposed to be annexed by the filing of a petition in the county court of the county in which such municipalities are situated, signed by a certain number of legal voters of the municipalities which the voters desire to be annexed, asking that the question of annexation be submitted to the voters of the respective municipalities, either at a general or special election, and provides in detail the terms and conditions upon which such annexation shall be made, giving no discretion whatever to the municipal authorities of the municipalities to be affected in the matter. It will thus be seen that in their essential provisions the two acts are entirely separate and distinct and in nowise conflict one with the other, and under the rule announced in the foregoing cases we must hold that section 2 of the act of 1872 was not repealed by the subsequent act of 1889.

It is next insisted that the election was void for the reason that the ballots used were not in proper form, as the form of the ballots used was that prescribed by section 2 of the act of 1872, the argument being that the special provision of the act of 1872 was repealed by section 16 of the act commonly known as the Australian Ballot act, adopted in 1891. In view of the conclusion that we have reached as to the effect of the curative act of June 24, 1915, and the power of the legislature to remedy defects in proceedings of this character by a curative act, we do not deem it necessary to consider this question, as the curative act expressly provides that if the proceedings have been taken in compliance with the provisions of section 2 of the act of 1872, "such incorporated city, village or town, and the territory comprising such city, village or town in its entirety, is hereby declared to have been legally and validly annexed to the other incorporated city, village or town." The curative act is sufficiently broad in its terms to cure any defects in the election in this respect.

It is further insisted that the annexation proceedings are void for the reason that the union ordinance, pursuant to which they were had, contained illegal and void provisions. The said ordinance provided for the paving of Ninth and Twelfth streets from the south limits of the city of Rock Island to the north bridge across Rock river, in the village of Sears, by special assessment, and stipulated what cost of such improvement the city of Rock Island should bear as its portion of the public benefits; also for the expenditure of not less than $12,500 to complete the system of water-works and fire protection which had been inaugurated by the village of Sears and for connecting of the same to the water system of the city of Rock Island; the immediate placing of all necessary fire hydrants for fire protection in the village; the building and equipping of a fire station in the village within two years, and for police protection and street lighting; also for requiring the Tri-City Railway

Company to establish and maintain a fifteen minute service over all its lines in the territory comprising the village of Sears. The theory of appellants is that the union ordinance constitutes a contract between the two municipalities, and that as the ordinance provides for a general scheme of public improvements the same constitutes the consideration for the adoption of the ordinance, and that if any of its provisions are invalid the consideration for the ordinance fails and it is void in its entirety. The particular provisions of the ordinance insisted upon as being invalid are those for the paving of Ninth and Twelfth streets, which are as follows:

"Sec. 3. Proceedings shall at once be instituted by the city of Rock Island for the paving of both Ninth and Twelfth streets south from Eighteenth avenue to the north bridge across Rock river by special assessment, under ordinances, one for each improvement, providing: (*a*) For the assessment against the city of Rock Island of twenty-five percentum of the cost of each thoroughfare as public benefits; (*b*) for the assessment of abutting property to a depth of one hundred forty (140) feet of total amount, not exceeding forty-five percentum, of the cost of each improvement, in no event, however, in excess of two dollars ($2) per front foot; (*c*) for the assessment against other property benefited and more than one hundred forty (140) feet removed from said improvements, of a proportion of the cost of each improvement, not exceeding thirty per cent; (*d*) the city of Rock Island to assume any cost in excess of said limitations, and in case any property described under class (*c*) above shall be assessed as benefited by both of said improvements, to asume one of said assessments."

Appellants contend that this part of the ordinance is void, (1) for the reason that the city cannot institute proceedings for the paving of streets by special assessment, as all proceedings of that character must originate with the board of local improvements; (2) that no appropriation was made for the payment of the city's portion of the cost

of these improvements, and that an appropriation must precede the contracting of a municipal indebtedness; and (3) that the provision in section 3 for the payment by the city of twenty-five per cent of the cost of the improvement as its portion as a public benefit, and all expense over and above forty-five per cent of the cost of the improvement assessed on property abutting on the improvement to a depth of 140 feet, which in no event is to exceed two dollars per front foot, is illegal and void for the reason such provision will not necessarily operate uniformly upon all property along the streets in question but may result in an unjust discrimination in favor of one piece of property over another, in that one piece of property may be benefited only forty-five per cent of the cost of the improvement and another sixty per cent of such cost, and under the ordinance property benefited to the extent of forty-five per cent of the cost will be required to pay the full amount of the benefit received by it, while the other property benefited to the extent of sixty per cent of the cost of the improvement will only be required to pay three-fourths of the amount of the benefit received, the city being obligated to pay all in excess of forty-five per cent of the cost of the improvement assessed against property abutting upon the improvement to the depth of 140 feet from the street line.

While it is true that all local improvements to be paid for by special assessment or special taxation must originate with the board of local improvements, it is equally true that the board of local improvements is but one of the departments or agencies of the city government and subject to its direction and control, and, as such, has the authority to originate a local improvement of the character provided for in this ordinance. The powers, duties and functions of the board of local improvements in the premises are confined to investigating, recommending and supervising such improvements. (*City of Lincoln* v. *Harts,* 266 Ill. 405.) The power to make such improvements is vested by section 9

of article 9 of the constitution in the corporate authorities of such municipalities. The provision, then, for paving the streets in question is one which it is within the power of the city of Rock Island to perform and which it may lawfully contract to perform, and the fact that difficulties may be encountered in carrying its provisions into effect does not, *ipso facto,* render such ordinance illegal and void. In a proceeding of this character we would not be justified in holding the ordinance void unless it provided for the doing of a thing which the municipality had no authority to do or perform. Such is not the case here.

As to the contention that an appropriation was necessary to be made before the ordinance was adopted, this contention is based upon the provisions of section 4 of article 7 of the Cities and Villages act, (Hurd's Stat. 1913, p. 280,) which section is as follows: "No contract shall be hereafter made by the city council or board of trustees, or any committee or member thereof; and no expense shall be incurred by any of the officers or departments of the corporation, whether the object of the expenditure shall have been ordered by the city council or board of trustees or not, unless an appropriation shall have been previously made concerning such expense, except as herein otherwise expressly provided." An examination of the ordinance in question shows that it does not provide for the incurring of any liability in the sense in which that term is used in the statute just quoted. All the ordinance does is to provide that certain public improvements shall be made, and that when such improvements are made twenty-five per cent of their cost shall be borne by the city as its just portion of the public benefits, and that a water-works and fire protection system shall be completed, which shall represent the equivalent of a public improvement that will cost not less than $12,500 when completed. Both of the improvements are still to be made, and until the time comes for carrying into effect this plan of public improvements no money is or need

be appropriated for that purpose. Until that times comes no liability is incurred by the city to anyone by this ordinance. The fact that the ordinance contains provisions which will require the city at some future time to incur an indebtedness does not create a present liability within the provisions of that section of the statute for which an appropriation must be made before such ordinance is adopted. Nor is the fact important that this arrangement may result in the city contracting a large indebtedness at some future time on account of such provisions, for the reason that the ordinance was submitted to a vote of the electors of each of the municipalities and has been approved and adopted by them at an election called and held for that purpose. That the city has the power to carry out these improvements and bear its portion of the cost of the same, as provided by this ordinance, cannot be denied, as it has the power to provide for the making of such improvements either by general taxation or by special assessments or special taxation, or by both general taxation and special assessments or special taxation. (Hurd's Stat. chap. 24, pars. 510, 511.) The ordinance, therefore, cannot be held illegal or invalid by reason of these provisions.

That the ordinance may not be uniform in the operation of its provisions upon all of the property on these streets and may result in an unjust discrimination in favor of one piece of property over another in attempting to spread the assessment in accordance with its provisions is immaterial in this proceeding. That is a matter for adjustment between the property owners and the municipality. It is also a question which may never arise under this ordinance. The tax-payers of the municipality and the property owners along this street whose rights are affected by this ordinance are the only parties who can complain of these provisions in the ordinance, and it may be that in attempting to carry out such provisions the conditions anticipated by appellants will not be encountered, or if they are encoun-

tered that all of the property owners on the street and tax-payers in the municipality will be willing to abide by such provisions notwithstanding they may result in some discrimination in favor of or against a property owner or a tax-payer in some instances. It does not appear from this record that any of the relators in this proceeding are so situated that they will be in anywise injured or affected by the provisions complained of, or that they have any just cause of complaint against the ordinance because of such provisions. They have no right to complain of matters which do not affect them, or to litigate in this proceeding, in behalf of others whose rights may be infringed, matters of which they do not complain or in respect to which, if their rights are infringed, they are still willing to abide without complaint. Neither do we think that these provisions of the ordinance are so interwoven and connected with its other provisions that the ordinance would not have been adopted by the aldermen and board of trustees of the respective municipalities and the voters of such municipalities if such provisions had been omitted from the ordinance. The rule for construing ordinances is the same as that for construing statutes. (*Illinois Central Railroad Co.* v. *City of Chicago,* 169 Ill. 329.) Under the rule announced in Cooley's Constitutional Limitations and in the authorities above cited, we are inclined to hold that even if such provisions are invalid, (which question we do not decide,) such fact, alone, would not justify us in holding the ordinance invalid in its entirety because of such provisions. All of the essential objects and purposes of the ordinance still could be carried into effect and these provisions of the ordinance be held invalid. They therefore do not avoid the whole ordinance. We do not deem these contentions well taken in this proceeding.

For the reasons given, the judgment of the lower court will be affirmed.

*Judgment affirmed.*

CARTWRIGH and DUNN, JJ., dissenting.