132 Ill.2d 64 (1989)
547 N.E.2d 107
In re APPLICATION OF THE COUNTY COLLECTOR OF KANE COUNTY (The People ex rel. Robert Critton, Kane County Collector, et al., Appellants,
v.
American National Bank and Trust Company, as Trustee, et al., Appellees).
No. 67627.
Supreme Court of Illinois.
Opinion filed September 27, 1989.
Rehearing denied December 4, 1989.
*65 Ronald R. Moses, Corporation Counsel, and Michael B. Weinstein, City Attorney, of Aurora, for appellant City of Aurora.
Alschuler, Putnam, McWethy, Funkey & Lewis, P.C., of Aurora (Paul A. Lewis, of counsel), for appellees.
Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Mary L. Mikva, of counsel), for amicus curiae City of Chicago.
Judgment affirmed.
JUSTICE RYAN delivered the opinion of the court:
Certain owners of real property located in Kane County within the corporate limits of the City of Aurora filed objections to the application for judgment based on their delinquent 1985 real estate taxes. They alleged that the tax levy of the city against their property was invalid because the city failed to publish an appropriation ordinance at least 10 days prior to passage of the tax levy ordinance. On stipulated facts, the trial court overruled their objections and granted the county collector's *66 application for judgment. The appellate court reversed (172 Ill. App.3d 897), and we granted leave to appeal (107 Ill.2d R. 315).
The objectors each paid their 1985 real estate taxes under protest and filed timely objections to the city levy. The City of Aurora was permitted to intervene in the application of the county collector for judgment for delinquent taxes and present its own case. The facts, stipulated at trial, are as follows: that Aurora is a home rule municipality and had passed both its appropriation and levy ordinance for the 1985 tax year at a meeting of its city council held on March 26, 1985; that no addition, modification, refiling, amendment or substitute for either ordinance was thereafter enacted or filed by the city; and that section 2-28 of the Aurora Code of Ordinances (Aurora, Ill., Code of Ordinances § 2-28) and section 10 of the publication of notices act (Ill. Rev. Stat. 1985, ch. 100, par. 8.2) (Notices Act) were both in full force and effect at the time the appropriation and levy ordinances were adopted.
Objectors claim that a valid appropriation ordinance must be in effect at the time a tax levy ordinance is passed. They contend that the levy ordinance for 1985 was invalid because before its passage the city failed to comply with the time periods for publication of the appropriation ordinance prescribed in Aurora's ordinance section 2-28 (Aurora, Ill., Code of Ordinances § 2-28) and in section 1-2-4 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 1-2-4). Both of these provisions require publication of the appropriation ordinance and a passage of 10 days before it will take effect.
The City of Aurora first argues that it no longer is required to pass a valid appropriation ordinance prior to passage of its tax levy ordinance. It next contends that section 2-28 of the city ordinance was passed prior to Aurora's becoming a home rule unit and that it is not *67 applicable because the 1985 appropriation ordinance was passed pursuant to Aurora's home rule powers and the city thereby repealed and effectively removed the publication requirements of the pre-home-rule ordinance. It also asserts that, under its home rule powers, it need not follow the publication requirements of section 1-2-4 of the Illinois Municipal Code. In the alternative, the city argues that the apparent limitations on home rule powers found in section 10 of the Notices Act (Ill. Rev. Stat. 1985, ch. 100, par. 8.2) were not constitutionally passed by the General Assembly and, thus, do not act to require a home rule unit to follow the publication provisions contained in the Illinois Municipal Code. Finally, it argues that the passage and approval of Public Act 85-855 cure any defect which might have existed in passage of the levy ordinance.
The trial court found that by exercising its power as a home rule unit of government in passing its 1985 appropriation ordinance, the city superseded the publication requirements of section 2-28 of the Aurora Code of Ordinances (Aurora, Ill., Code of Ordinances § 2-28). The court also found that section 10 of the Notices Act (Ill. Rev. Stat. 1985, ch. 100, par. 8.2) was passed by the General Assembly pursuant to section 6(i) of article VII of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, § 6(i)), but to properly limit and bind a home rule unit to the notice and publication requirements of section 1-2-4 of the Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 1-2-4), section 10 should have been passed pursuant to section 6(g) of article VII of the constitution (Ill. Const. 1970, art. VII, § 6(g)). The 1985 tax levy ordinance was therefore declared to be valid and the county collector's application for judgment for delinquent taxes for 1985 was granted.
The appellate court reversed, holding that the city failed to comply with its own publication requirement *68 which the appropriation ordinance expressly imposed and, therefore, the tax levy was invalid as to the objectors. Additionally, the appellate court held that Public Act 85-855 constitutes an ineffective attempt to validate the challenged tax levy. 172 Ill. App.3d 897.
The first issue we must address is whether the City of Aurora tax levy for the year 1985 was void because of a failure to publish the appropriation ordinance at least 10 days prior to passage of the tax levy ordinance. This court has held that before a municipality may validly pass an ordinance levying taxes it must have first passed an appropriation ordinance which is in full force and effect at the time of the adoption of the levy ordinance, and that to be in full force and effect there must be publication of the appropriation ordinance followed by a lapse of the specified period of time. (People ex rel. Larson v. Thompson (1941), 377 Ill. 104, 109; People ex rel. Montgomery v. Wabash Ry. Co. (1935), 360 Ill. 173, 176; People ex rel. Sullivan v. Florville (1903), 207 Ill. 79, 86-87; People ex rel. Fuller v. Peoria, Decatur & Evansville R.R. Co. (1886), 116 Ill. 410, 414-15.) The City of Aurora did first pass an appropriation ordinance but this was done on the same day it passed its levy ordinance.
Aurora and amicus curiae, the City of Chicago, argue that the procedure followed was valid and that the above-cited cases are not applicable. They contend that a municipality no longer is required to have an appropriation ordinance "in effect" when the tax levy is passed because of changes in pre-home-rule statutory requirements.
In Sullivan, the statute then in effect required the city council to determine in its tax levy ordinance "the total amount of appropriations * * * legally made and to be collected from the tax levy." (Emphasis in original.) (Sullivan, 207 Ill. at 84.) The court reasoned that an appropriation, to be "legally made," must be in effect as of *69 the passage of the levy. The appropriation ordinance at issue in Sullivan was not published at least 10 days before passage of the levy, as the statute required. The court, therefore, held it was not effective at the time the levy was passed and the levy was thus not based on "appropriations legally made." This reasoning was applied in the Fuller, Montgomery and Larson cases. Aurora and amicus argue that the statute in effect in 1985 did not require that the levy be based on appropriations "legally made." Instead, since 1971 the statute has provided, in applicable part, that "the corporate authorities shall ascertain the total amount of appropriations legally made or budgeted for and any amount deemed necessary to defray additional expenses and liabilities for all corporate purposes." (Emphasis added.) (Ill. Rev. Stat. 1971, ch. 24, par. 8-3-1.) They then contend that "even if the Aurora appropriation ordinance for 1985 could not be said to constitute `appropriation legally made' at the passage of the levy ordinance, the amounts included in the appropriation ordinance were certainly `budgeted for'" and that "given the change in the applicable statutory language, no statute required an appropriation ordinance to be in effect at the time of the Aurora levy."
Regardless of the construction that may logically be urged as to the language of the present statutes, we are faced with the fact that the ordinances of the City of Aurora involved in this litigation contain specific language which does not admit of the application of the statutory construction for which the city contends.
Our analysis must be based on the ordinances which we have before us, and we do not believe that the arguments concerning the statutes are persuasive in light of the language of the ordinances actually adopted by Aurora. In the tax levy ordinance which the city adopted in 1985, it is stated in sections 1 and 2 that it is based on "the total amount of appropriation heretofore legally *70 made." (Emphasis added.) It does not state that it is based on the amount of appropriations "budgeted for." In section 3 of the tax levy ordinance it declares that, pursuant to the city's home rule powers, any Municipal Code provision in conflict with the ordinance will not be applicable. Thus, having imposed the requirement that the appropriation be "heretofore legally made," not merely budgeted for, we believe that the cases cited above are applicable and the Illinois Municipal Code provision at variance with those cases is superseded by the levy ordinance itself. Therefore, under the principles announced in Sullivan, Fuller, Montgomery and Larson, and the language of the levy ordinance, Aurora was required to have an appropriation ordinance in effect at the time the tax levy ordinance was passed.
Aurora further contends that "had it chosen" or if it "were writing on a clean slate," the publication requirements for the appropriation ordinance could have been "modified" or "completely done away with." Therefore, it need not publish and wait 10 days for the ordinance to be effective. Again, whether these arguments are valid, and we do not so hold, is not dispositive in this case because our focus must be on the appropriation and levy ordinances which were actually adopted by the city, rather than on those which it might have adopted, and on the municipal ordinances which were in effect in Aurora.
Aurora had in existence at the time in question an ordinance titled "Appropriations procedures and limitations," which declared:
"(a) The city council shall pass an appropriation ordinance within the first quarter of each fiscal year, to be termed the annual appropriation ordinance." (Aurora, Ill., Code of Ordinances § 2-21(a).)
The appropriation ordinance adopted in 1985 in question in this case stated in section 5:

*71 "That this ordinance shall be in full force and effect from and after its final passage, approval, recording and publication and lapse of time prescribed by law." (Emphasis added.)
Despite this directive, the appropriation ordinance was not published nor was any lapse of time observed. The relevant "law" in effect at this time referred to in section 5 of the appropriation ordinance was section 2-28 of Aurora's ordinances, which was enacted by the Aurora city council prior to Aurora's attaining home rule unit status. It provides:
"All ordinances of the city * * * making any appropriation, shall (1) be printed or published in book or pamphlet form, published by authority of the corporate authorities, or (2) be published at least once, within ten (10) days after passage, in one or more newspapers published in the city. No such ordinance shall take effect until ten (10) days after it is so published [with specific exceptions not applicable here]." (Emphasis added.) (Aurora, Ill., Code of Ordinances § 2-28.)
No ordinance has subsequently been adopted to repeal or modify this section. Aurora ordinance section 2-28 closely tracks the language of the Illinois Municipal Code section relating to publication of an appropriation ordinance, section 1-2-4, which states:
"All ordinances of cities, villages and incorporated towns * * * making any appropriation, shall (1) be printed or published in book or pamphlet form, published by authority of the corporate authorities, or (2) be published at least once, within 30 days after passage, in one or more newspapers published in the municipality, or if no newspaper is published therein, then in one or more newspapers with a general circulation within the municipality * * *. No such ordinance shall take effect until 10 days after it is so published [with exceptions not applicable here]." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 24, par. 1-2-4.
*72 Section 10 of "An Act to revise the law in relation to notices" (Notices Act) purportedly makes section 1-2-4 of the Illinois Municipal Code applicable to both home rule and non-home-rule municipalities. Section 10 provides:
"Laws which require notice to be published or posted by a municipality * * * shall apply to municipalities * * * which are home rule units as well as municipalities * * * which are not home rule units. Any home rule unit may enact an ordinance prescribing more stringent requirements binding upon itself which would serve to give further notice to the public." (Ill. Rev. Stat. 1985, ch. 100, par. 8.2.)
The city contends that neither the statute nor ordinance section 2-28 is controlling, claiming instead that section 5 of the appropriation ordinance is boilerplate and mere surplusage, applicable only to its old status as a non-home-rule municipality.
Generally, in construing municipal ordinances, the same rules are applied as those which govern the construction of statutes. (City of East St. Louis v. Union Electric Co. (1967), 37 Ill.2d 537, 542; Village of Park Forest v. Wojciechowski (1963), 29 Ill.2d 435, 437.) In construing a statute or an ordinance, a court should not adopt a construction which renders words or phrases in a statute superfluous. In re Application of Rosewell (1987), 117 Ill.2d 479, 486.
Section 5 of the appropriation ordinance clearly states that it would not become effective until after it has been published and the time prescribed by "law" has passed. Other than the preamble and the delineation of the appropriations, the ordinance only contains five sections, and this publication requirement was found in the fifth section. With so few provisions, and this being the last section before the record of the vote of the city council and the mayor's signature, it does not appear to *73 be mere "boilerplate." The city imposed this requirement on itself, and we must attempt to give meaning to the words and determine what law is referred to in regard to publication. Homefinders, Inc. v. City of Evanston (1976), 65 Ill.2d 115, 125.
As earlier stated, section 2-28 of Aurora's ordinances and section 1-2-4 of the Illinois Municipal Code deal with publication and lapses of time and the provisions closely parallel each other. The city urges us to address the issue which was not reached in City of Rockford v. Gill (1979), 75 Ill.2d 334, 342, namely, whether the law as stated in section 1-2-4 of the Illinois Municipal Code is applicable to a home rule unit. Also, it urges us to determine that the Notices Act was not passed in a constitutional manner. We find it unnecessary to address these arguments. A reviewing court will decide a constitutional question only where it is essential to disposition of the case. (Bender v. City of Chicago (1974), 58 Ill.2d 284, 287.) It is not necessary to determine the applicability of section 1-2-4 or the constitutionality of the Notices Act because this case may be decided by applying Aurora ordinance section 2-28 as the "law" applicable. The plain meaning of section 2-28, which the appropriation ordinance adopts, is that the appropriation ordinance must be published 10 days before it will become effective. Having admittedly failed to do this, the ordinance was not in effect at the time that the tax levy ordinance was passed.
The city attempts to avoid the consequences of section 2-28 of its ordinance by arguing that merely by stating in the appropriation ordinance that it was acting pursuant to its home rule unit authority, any ordinance adopted prior to 1970, but not yet revoked, is no longer valid. The city cites a number of cases where it has been held that a home rule unit's exercise of its power will supersede any conflicting pre-1970 constitutional legislation. *74 (See County of Cook v. John Sexton Contractors Co. (1979), 75 Ill.2d 494, 513; Kanellos v. County of Cook (1972), 53 Ill.2d 161, 166; Messina v. City of Chicago (1986), 145 Ill. App.3d 549, 552.) We do not believe that these cases can be extended as urged by the city, such that upon becoming a home rule unit all prior municipal ordinances are automatically revoked. Those cases dealt with pre-1970 State statutes which, it was argued, were inconsistent with a home rule unit's ordinance or exercise of power and the home rule unit authority superseded the statute. In our case, the appropriation ordinance adopted by the home rule unit incorporates the provisions of a valid ordinance which the city had previously adopted. By, in the appropriation ordinance, referring to the requirements of its own ordinance requiring notice, the city exhibited an intent to be bound by the procedures for adopting an appropriation ordinance set forth in its own code. We do not believe that its home rule powers allow it to ignore valid procedures which it has imposed upon itself. However, the city also points out that section 4 of the appropriation ordinance states that "all ordinances or parts of ordinances inconsistent herewith shall be and the same are hereby repealed so far as such inconsistency exists." Aurora claims that section 2-28 is inconsistent and is therefore superseded. We do not find an inconsistency between the ordinances. The appropriation ordinance says there will be publication and a lapse of time, and section 2-28 states that there will be publication and a lapse of 10 days will be observed. The only inconsistency was the city's failure to act in accordance with the express language of these two ordinances. We find that the appropriation ordinance adopts and does not supersede section 2-28.
Next, we must determine whether the failure to abide by section 2-28 invalidates the levy. A determination of *75 whether this noncompliance invalidates the municipal legislative action depends on whether the provision is mandatory or directory. Failure to comply with a mandatory provision of an ordinance will render void the proceeding to which it relates, while it is not essential to strictly comply with a directory provision. (Hester v. Kamykowski (1958), 13 Ill.2d 481, 484-85.) If a statutory "provision merely directs a manner of conduct for the guidance of the officials or specifies the time for the performance of an official duty, it is directory, absent negative language denying the performance after the specified time." (Andrews v. Foxworthy (1978), 71 Ill.2d 13, 21.) Section 2-28 does contain negative language specifying the effect of tardy performance; it states that no "ordinance shall take effect until ten (10) days after it is so published." In Homefinders, Inc. v. City of Evanston (1976), 65 Ill.2d 115, a municipal ordinance involved similar language and the defendants also contended that they did not have to publish the ordinance. This court held, however, that "[w]hile publication of the amendatory ordinance may not have been required by statute, the fact nevertheless remains that the ordinance itself specifically provided that it was not to become effective until after `publication in the manner provided by law,' i.e., by one of the methods specified in section 1-2-4." (65 Ill.2d at 125.) This court held that having imposed this requirement on itself, it was mandatory for the city to comply with the publication requirements of section 1-2-4 of the Municipal Code. Likewise, the ordinance before us expressly states the effect of noncompliance and it is thus mandatory to comply with the publication and lapse-of-time provisions.
The city's failure to comply with the mandatory publication and time-lapse provisions of its appropriation ordinance rendered the ordinance ineffective at the time the city sought to pass its levy ordinance. As noted above, *76 the levy ordinance specifically provided that it is based upon an appropriation "heretofore legally made." Absent an effective "heretofore legally made" appropriation ordinance, the city lacked power to adopt a levy ordinance and the taxpayers' objection should be sustained.
Aurora further contends, however, that any error in the adoption of its levy ordinance was cured by subsequent legislation. Public Act 85-855 was enacted into law and became effective subsequent to entry of the final order in this case. The legislation states that the 1985 City of Aurora tax levy ordinance is "validated, ratified and declared in full force and effect, notwithstanding such tax levy ordinance being adopted on the same date as the 1985 City of Aurora appropriation ordinance; and such appropriation ordinance is also hereby declared a valid and effective ordinance as of that same date." (Pub. Act 85-855, eff. Sept. 24, 1987.) The city argues that the public act is in accordance with the legislative power to validate void acts as enunciated in People ex rel. Dougherty v. City of Rock Island (1915), 271 Ill. 412. The Dougherty court stated that the legislature has the power to validate void municipal proceedings as long as "the act ratified and confirmed [is one] which it was lawful for the legislature to authorize in the first instance" and the ratification does not infringe on the rights of others. 271 Ill. at 418.
The rule as to curative legislation announced in Dougherty has since been qualified and restricted. (See People ex rel. Rhodes v. Miller (1946), 392 Ill. 445, 449-50.) However, we need not here review the history of curative legislation as it relates to tax levy ordinances, or the effect of previous cases on present levy procedures, because we conclude that the General Assembly had no authority to enact curative legislation to render inoperative requirements in the appropriation and levy procedures *77 which the city, as a home rule unit, had imposed upon itself.
The city contends that this curative legislation is valid and similar to that approved in People v. Holmstrom (1956), 8 Ill.2d 401. We do not find Holmstrom contrary to our holding. In Holmstrom the State sued the defendant to recover delinquent personal property taxes for several years in which assessment lists were not published until after the date required in section 103 of the Revenue Act of 1939. (See, e.g., Ill. Rev. Stat. 1953, ch. 120, par. 584.) The trial court entered judgment for the State, and the defendant appealed directly to this court. Since this court had earlier held that publication was mandatory (People v. Jennings (1954), 3 Ill.2d 125, 131), the defendant argued that the assessments were void. However, prior to the trial court's judgment, a validating act had been passed which provided that all assessments were valid for purposes of taxation even though they had not been published as required by statute. The defendant contended that the validation act itself was void. The court upheld the constitutionality of the validating act, concluding:
"The general rule is that in the absence of a constitutional prohibition the legislature may validate by a curative act any proceeding which it might have authorized in advance. [Citation.] As applied to tax legislation, the rule has been interpreted to mean that the legislature has the power to pass an act curing a defect in a tax levy when the defect consists of the failure to observe some requirement of the law without which the legislature might have authorized the levy to be made." (Holmstrom, 8 Ill.2d at 404-05.)
The court went on to conclude that "inasmuch as the legislature had the power to permit the levy of the taxes without requiring the assessments to be published, it was likewise within its power to cure irregularities in publication *78 by the validating act." Holmstrom, 8 Ill.2d at 405-06; see also Schlenz v. Castle (1981), 84 Ill.2d 196, 208-09.
We believe that our holding today is in accord with Holmstrom because in this case we are dealing with the added constitutional interests and protections of a home rule municipality. This municipality was acting, or failing to act, in accordance with its own legislation, Aurora ordinance section 2-28. Under the home rule provisions of the 1970 Constitution, the General Assembly's power "to limit the actions of home-rule units has been circumscribed and home-rule units have been constitutionally delegated greater autonomy in the determination of their government and affairs. To accomplish this independence the constitution conferred substantial powers upon home-rule units subject only to those restrictions imposed or authorized therein." (Kanellos v. County of Cook (1972), 53 Ill.2d 161, 166; see Ill. Const. 1970, art. VII, § 6(a).) In accordance with its home rule powers conferred in the constitution, Aurora was free to impose publication requirements on itself in levying taxes. Public Act 85-855, however, attempts to nullify a home rule's choice to impose its own publication requirement. The legislation attempts to rectify a failure to act in accordance not with any State statute but in accordance with a home rule ordinance. It is thus not curing an action which did not conform with State laws, but is invading the constitutionally protected domain of a home rule unit. We do not believe that in the first instance the legislature could have done away with this home-rule-imposed requirement, nor is it within its power to avoid the consequences of failing to act in accord with the ordinance. Therefore, this curative legislation is ineffective.
For the reasons stated, the judgment of the appellate court, reversing the judgment of the circuit court of *79 Kane County and remanding the cause with directions to sustain the objections to the taxes extended for the City of Aurora for 1985, is affirmed.
Judgment affirmed.