PATRICK MEDIA GROUP, INC., Plaintiff-Appellant, v. AD-EX, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—91—0298

Opinion filed December 30, 1992.

Thomas P. Sullivan, William A. Von Hoene, Jr., and Robert R. Stauffer, all of Jenner & Block, of Chicago, for appellant.

Robert J. Weber, of Chicago, for appellees.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Patrick Media Group, Inc. (plaintiff), a corporation whose principal business is the construction and operation of advertising billboard signs, brought an action against Ad-Ex, Inc.

(defendant), a competitor of plaintiff, seeking to enjoin defendant from maintaining four advertising signs on the ground that the signs violate applicable provisions of the Municipal Code of the City of Chicago, a home rule unit. Patrick asserts standing to bring this action under section 11–13–15 of the Illinois Municipal Code (Ill. Rev. Stat. 1991, ch. 24, par. 11–13–15), which allows certain private parties to enforce municipal regulations.[1]

Ad-Ex moved to dismiss the complaint on the ground that the language of section 11–13–1, that "This amendatory Act of 1971 does not apply to any municipality which is a home rule unit," renders section 11–13–15 inapplicable to alleged violations of a City of Chicago ordinance, and plaintiff therefore lacks standing to bring the action. The trial judge denied defendant's motion and, pursuant to Illinois Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)), certified this issue for us on appeal:

"Whether the provision in Ill. Rev. Stat., ch. 24, [par.] 11–13–1 which states 'This Amendatory Act of 1971 does not apply to any municipality which is a home rule unit' prohibits a private party from instituting a lawsuit, pursuant to Ill. Rev. Stat., ch. 24, [par.] 11–13–15, to enforce an ordinance or ordinances adopted by a home rule unit under Division 13 of the Illinois Municipal Code."

We affirm the trial court's ruling. Subsequent amendments to section 11–13–1 make it clear that the 1971 amendment does not apply to the entire section so that the section is applicable, in the main, to home rule and non-home-rule municipalities.

Plaintiff and defendant companies both erect advertising signs and lease space on those signs to advertisers. As part of a continuing "guerrilla" war being waged by the parties in the circuit and appellate courts of our State, plaintiff's action seeks to prevent

---

[1]Section 11–13–15 provides in part:

"In case any building or structure, including fixtures, is constructed *** in violation of an ordinance or ordinances adopted under Division 13, 31 or 31.1 of the Illinois Municipal Code, or of any ordinance or other regulation made under the authority conferred thereby *** any owner or tenant of real property, within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation *** may institute any appropriate action or proceeding (1) to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or use *** (4) to restrain, correct, or abate the violation." Ill. Rev. Stat. 1991, ch. 24, par. 11–13–15.

defendant from maintaining four signs allegedly constructed within 1,200 feet of signs constructed by plaintiff.[2]

Plaintiff states that since it owns or leases all of the property upon which its signs are located, it has rights pursuant to section 11—13—15, which states that "any owner or tenant of real property, within 1,200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation *** may institute appropriate action" to enforce the regulation. Ill. Rev. Stat. 1991, ch. 24, par. 11—13—15.

Defendant maintains, however, that section 11—13—1 of the Illinois Municipal Code provides that any grant of authority under Division 13, entitled "Zoning," does not apply to home rule units since the section provides: "This amendatory Act of 1971 does not apply to any municipality which is a home rule unit." Ill. Rev. Stat. 1991, ch. 24, par. 11—13—1.

Prior to the 1970 Constitution, municipalities were deemed to have only those powers which were specifically granted to them by the constitution or by statute.[3]

---

[2]Originally, Ad-Ex challenged the validity of certain "set-back" requirements in the Chicago Zoning Ordinance and Electrical Code, including the requirement that prohibits the construction of most advertising signs within 500 feet of expressways. The 34 lawsuits between Ad-Ex and the city were dismissed upon agreement to a settlement in which the city issued permits for Ad-Ex to construct specified signs at certain locations (including the four locations at issue here), and Ad-Ex agreed to dismiss its complaints with prejudice and refrain from applying for any more permits that would violate the set-back requirements. This court later found that settlement void as against public policy. *Ad-Ex, Inc. v. City of Chicago* (1990), 207 Ill. App. 3d 163, 565 N.E.2d 669.

Prior to our decision, plaintiff had filed suit challenging the validity of the settlement agreement, seeking to enforce the city ordinances, and enjoining the city from issuing permits for the disputed signs to Ad-Ex. This court ultimately determined that plaintiff had no standing to challenge the validity of the agreement itself, but could maintain a *quo warranto* action challenging the authority of city officials to enter into the settlement. (*People ex. rel. Patrick Media Group, Inc. v. City of Chicago* (1991), No. 1—89—3034.) However, we granted defendant's subsequent motion to have that decision withdrawn in light of our determination that the settlement agreement was void. *People ex. rel. Patrick Media Group, Inc. v. City of Chicago* (1991), No. 1—89—3034.

[3]The delegates to the 1969 Constitutional Convention discussed these limitations and referred to them as "Judge Dillon's rule," having been set out in 1 Dillon, *Municipal Corporations*, 448 (5th ed. 1911). See also 4 Record at Proceedings, Sixth Illinois Constitutional Convention 3038 (statements of Delegate John G. Woods).

Effective July 1, 1971, the new constitution afforded home rule units the right to "exercise any power and perform any function pertaining to its government and affairs, including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare." Ill. Const. 1970, art. VII, §6(a).

■■ Although zoning is clearly within the activities contemplated by the new home rule provisions, the constitution allows home rule units to exercise powers concurrently with the State to the extent that the legislature does not impose limitations on such concurrently exercised powers or declares the State's exercise to be exclusive. (Ill. Const. 1970, art. VII, §6(i).) Further, until the State acts, the rights and duties of public bodies shall remain as if the constitution had not been adopted. Ill. Const. 1970, Transition Schedule, §9.[4]

Thus, section 11—13—1 would remain in force as to the City of Chicago until effectively changed or amended.

The General Assembly could elect (i) to allow concurrent zoning regulation with home rule units, (ii) to exercise exclusive regulatory powers, or (iii) to abdicate its powers with respect to that genre of governmental activity.

Accordingly, we must now inquire as to the intended effect of the 1971 amendment to section 11—13—1: "This amendatory Act of 1971 does not apply to any municipality which is a home rule unit." Unfortunately, there are no audio tapes of the General Assembly's proceedings for that period. One can, however, easily surmise that after decades of legislative wars to secure the right of self-government for the State's larger municipalities, those

---

[4]Section 9 of the Transition Schedule states:

"The rights and duties of all public bodies shall remain as if this Constitution had not been adopted with the exception of such changes as are contained in this Constitution. All laws, ordinances, regulations and rules of court not contrary to, or inconsistent with, the provisions of this Constitution shall remain in force, until they shall expire by their own limitation or shall be altered or repealed pursuant to this Constitution." Ill. Const. 1970, Transition Schedule, §9.

rights would be legislatively asserted at the first possible moment.[5]

■ To appreciate the mischief of the 1971 amendment, an understanding of the legislative process is required. In Illinois, we do not amend statutes by enacting a bill which merely sets out the new language. Rather, our constitution requires that a bill "expressly amending a law shall set forth completely the sections amended." Ill. Const. 1970, art. IV, §8(d). See also Van der Silk & Redfield, Lawmaking in Illinois 235 (1986).

The substantive amendment to section 11—13—1 in 1971 was the addition of another objective of the zoning statute: "to insure and facilitate the preservation of sites, areas, and structures of historical, architectural and aesthetic importance." Pub. Act 77—1373, eff. Aug. 31, 1971 (amending Ill. Rev. Stat. 1969, ch. 24, par. 11—13—1).

Plaintiff argues that the concluding paragraph of the section relating to the nonapplicability to home rule units applies only to the additional substantive language contained in the 1971 amendment, although the entire section was reenacted in 1971. (Pub. Act 77—1373, eff. Aug. 31, 1971 (amending Ill. Rev. Stat. 1969, ch. 24, par. 11—13—1).) If we were required to examine this matter from a 1971 perspective, we probably would be compelled to disagree with the

---

[5]In the 77th and 78th General Assembly, home rule advocates apparently added to each amendment to the Illinois Municipal Code "This amendatory Act of 1971 does not apply to any municipality which is a home rule unit" or "This amendatory Act of 1971 is not a limit on home rule powers."

In the 77th General Assembly, the following sections of the Illinois Revised Statutes (1971) were amended as to applicability:

| | |
|---|---|
| Chapter 24, section 3—4—6.1; | Chapter 24, section 11—11—1; |
| Chapter 24, section 3—13—6; | Chapter 24, section 11—13—1; |
| Chapter 24, section 3—13—11; | Chapter 24, section 11—48.2—1A; |
| Chapter 24, section 3—13—15; | Chapter 24, section 11—48.2—2; |
| Chapter 24, section 10—1—13; | Chapter 24, section 11—48.2—6; |
| Chapter 24, section 11—5—7; | Chapter 24, section 11—74—13. |
| Chapter 24, section 11—5—8; | |

In the 78th General Assembly, the following sections of the Illinois Revised Statutes (1973) were amended as to applicability, except substituting the year:

| | |
|---|---|
| Chapter 24, section 8—5—1; | Chapter 24, section 10—3—2; |
| Chapter 24, section 10—2.1—5; | Chapter 24, section 10—5—2; |
| Chapter 24, section 10—2.1—6; | Chapter 24, section 11—5—7. |
| Chapter 24, section 10—2.1—8; | |

It appears that by 1975, the General Assembly understood that these amendments were unnecessary and no longer placed them on every amendment to chapter 24, which regulates cities and villages.

plaintiff and would conclude that the General Assembly meant for the State to leave the field of regulation as to home rule units; however, the legislature has amended this very section (reenacting it in its entirety) on two subsequent occasions in 1982 and 1990[6] and has not seen fit to change the sentence directing that the 1971 amendment shall not apply to home rule units.

Do the 1982 and 1990 amendments apply to home rule units? Had the General Assembly wished to effect the nonapplicability of the entire section, it would have been a simple matter at the time of these subsequent amendments to expressly state that the entire section did not apply to home rule units.

■ Addressing this ambiguity, we can only conclude that the statute does regulate home rule communities because the legislature has not clearly negated the State's concurrent regulation and that the 1971 amendment does not apply to the stated objectives of section 11—13—1 here considered.[7]

Therefore, we find plaintiff has standing to maintain this action.

In *La Salle National Bank v. Harris Trust & Savings Bank* (1991), 220 Ill. App. 3d 926, 581 N.E.2d 363, the court found that the amendatory language of section 11—13—1 did not foreclose plaintiff from pursuing its private action. That decision was predicated upon the theory that the 1971 amendment was a limitation on home rule units and that the framers of the constitution would not have intended non-home-rule municipalities to have greater power than home rule units. (*La Salle*, 220 Ill. App. 3d at 929.) We do not read the legislative effort—albeit ambiguous and of little or no effect—as reducing the powers of home rule communities. We believe that the legislature could decide that sections 11—13—1 and 11—13—15 are not available to home rule communities,

---

[6]Pub. Act 82—115, §1, eff. Jan. 1, 1982 (amending Ill. Rev. Stat. 1981, ch. 24, par. 11—13—1); Pub. Act 86—1025, art. 3, §1, eff. Jan. 24, 1990 (amending Ill. Rev. Stat. 1989, ch. 24, par. 11—13—1).

[7]It is conceded that following our logic, the 1971 change with respect to "preservation of sites *** of historic, architectural and aesthetic importance" would not apply to home rule communities, while the remainder of section 11—13—1 would be so applicable. Further, it makes reliance on the Illinois Revised Statutes somewhat dangerous since a reader cannot know what was adopted before 1971, in 1971, 1982 or 1990 without resort to the session laws. Consider section 11—25—4, which now recites "The amendatory Acts of 1971, 1972 and 1973 are not a limit upon *** home rule." (Ill. Rev. Stat. 1991, ch. 24, par. 11—25—4.) The section was amended in each of those years and also in 1989.

and that units of local government would then be free to fashion their own zoning framework.

Perhaps the unique dynamics of each community should be considered by the local authorities rather than at the State level. Citizens of communities of differing size may wish to shoulder different responsibilities and may encounter different standards. For example, in small downstate communities or wealthy suburbs, the 1,200-foot limitation might include only a few people, while in densely populated areas of Chicago, 1,200 feet might contain thousands of potential plaintiffs. Similarly, small communities might wish to shift the expenses of ordinance enforcement to private landowners, while larger cities with adequate full-time legal counsel are able to enforce their own codes.

We do not quarrel with the result in *La Salle*, but use a different rationale to arrive at our decision.

The *La Salle* court relied upon *City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 367 N.E.2d 692, in reaching its decision. *Houser* found that a home rule unit could properly institute demolition proceedings under a Division 13 power despite the presence of the same language as found in section 11—13—1, because granting non-home-rule units such a power and denying that same authority to home rule units "would establish an unconstitutional classification and is meaningless." *Houser*, 67 Ill. 2d at 275.

Certainly, we agree with the *La Salle* court that the constitution intended to allow home rule municipalities greater freedom to institute their own ordinances. (*Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146, 150, 452 N.E.2d 10.) However, contrary to the situation in *Houser*, we find that section 11—13—1 in this instance does not discriminate in favor of non-home-rule units at the expense of home rule units. Power is not usurped from home rule units since those municipalities could be, under the 1970 Constitution, the singular authority to determine, *inter alia*, whether to allow private citizens to intervene in the enforcement of zoning ordinances created under home rule auspices if the State did not exercise concurrent regulation with regard to zoning.

Like *Houser, City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483, 338 N.E.2d 19, had held that the language of the 1971 amendatory provision, identical to that of section 11—13—1 in this case, did not revoke a home rule unit's extraterritorial zoning powers since it found no basis to distinguish between non-home-rule units. *Van Natta*, 61 Ill. 2d at 490.

However, *Van Natta* and *Houser* express concern only that it is unconstitutional to limit the powers of home rule units in a manner not imposed on non-home-rule units since it is the grant of additional powers to home rule units that article VII, section 6, of the 1970 Constitution intended. Both courts stop short of declaring the 1971 amendment unconstitutional.[8]

We do not believe that the 1971 amendment restricts the power of home rule communities; rather, it enhances their right to decide their own destiny. Three other cases which should be noted address the scope of a municipality's powers to regulate access to the State's court system and the method of review to be used by the State courts: *Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11, 338 N.E.2d 186 (circuit court has jurisdiction to hear a challenge to a fine imposed by a municipal administrative agency, notwithstanding a municipal ordinance that attempted to govern the jurisdiction and procedure of the circuit court in such a matter); *Cummings v. Daley* (1974), 58 Ill. 2d 1, 317 N.E.2d 22 (ordinance was invalid which would have allowed a real estate broker whose license is suspended to appeal the suspension under the State's Administrative Review Act; such ordinance was beyond the scope of power afforded a home rule unit under section 6 of article VII of the 1970 Constitution); *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 317 N.E.2d 3 (ordinance was invalid which gave the circuit court the power to review certain decisions of the city's director of revenue and made the proceedings subject to the State's Administrative Review Act; such ordinance was beyond the scope of power afforded a home rule unit under the constitution).

In *Alschuler v. Department of Housing & Urban Development* (N.D. Ill. 1981), 515 F. Supp 1212, *aff'd* (7th Cir. 1982), 686 F.2d 472, the court found still another method of ignoring the 1971 amendment and declining to face the scope of its application. *Alschuler* denied plaintiff's standing under section 11—13—15 to enforce the City of Chicago's Lake Michigan and Chicago Lakefront Protection Ordinance, but determined that the city had properly

---

[8]Contrary to our reading of *La Salle*, *Van Natta* and *Houser*, at least one writer believes that *La Salle* "held division 13 of the municipal code unconstitutional to the extent that it deprived *** citizens of the power to invoke section 11—13—15." Brusslan, *Private Citizens' Right to Abate Local Zoning Violations*, 80 Ill. B.J. 564, 565 (1992).

adopted its ordinance under Division 48.2 of the Illinois Municipal Code rather than under Division 13 relating to zoning.

Different courts have developed ways to avoid giving meaning to the 1971 amendment. *La Salle* and *Houser* viewed it as a limitation on home rule power and declined to give effect to the amendment because the framers of the constitution and the General Assembly could not have intended to provide non-home-rule communities with powers that were not available to home rule units. *Van Natta* seemed to agree that home rule communities could not have these powers limited although none of these courts were willing to strike down the odious 1971 amendment. *Alschuler* merely claims that it need not consider the amendment because the city's lakefront protection ordinance was not a zoning regulation under Division 13 (zoning) but an independent exercise of home rule powers under another statutory provision.

We probably add a new dimension to the confusion but hopefully are facing the courts' dilemma in a forthright manner. We believe that the General Assembly could exclude home rule communities from the operation of section 11—13—1 and thus allow them to fashion their own criteria of standing as to the enforcement of their ordinances (keeping in mind *Nowicki*, *Cummings*, and *Paper Supply*). Because there have been subsequent additions to section 11—13—1 with no conjunctive update of the final paragraph, we cannot merely choose to ignore statutory language, but we limit the amendment to its literal application: the substantive material enacted in 1971.

While the courts are pounded in this crucible of casuistry, we can only hope that the General Assembly will thoughtfully examine this 1971 amendment and its counterparts in other amendments to the Illinois Municipal Code.[9]

---

[9]While the home rule amendments adopted during the years following adoption of our 1970 Constitution remain a part of the statutes, in 1979 the General Assembly enacted section 7 of the Statute on Statutes, which provides:

"No law enacted after January 12, 1977, denies or limits any power or function of a home rule unit, pursuant to paragraphs (g), (h), (i), (j), or (k) of Section 6 of Article VII of the Illinois Constitution, unless there is specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit." Ill. Rev. Stat. 1991, ch. 1, par. 1106.

For all of the foregoing reasons, we affirm the trial court and remand this matter for further consideration.

Affirmed.

RIZZI and CERDA, JJ., concur.