In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-1966

MARTY NEVEL and LAURA NEVEL,

*Plaintiffs-Appellants*,

*v.*

VILLAGE OF SCHAUMBURG, an Illinois Corporation;
AL LARSON, President of the Village of Schaumburg;
PAT RILEY, JACK SULLIVAN, GEORGE DUNHAM, TOM
DAILLY, MARGE CONNELLY, MARY ECKER, members
of the Board of Trustees of the Village of Schaumburg;
KEN FRITZ, Village Manager of the Village of
Schaumburg; and NELS HORNSTROM, Director of
Building and Code Enforcement for the
Village of Schaumburg,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 2957—**Matthew F. Kennelly**, *Judge*.

ARGUED NOVEMBER 27, 2001—DECIDED JULY 26, 2002

Before BAUER, HARLINGTON WOOD, JR., and MANION,
*Circuit Judges*.

HARLINGTON WOOD, JR., *Circuit Judge*.  This dispute
stems from Marty and Laura Nevel's desire to install vinyl
siding on a home they own which is located at 311 Lex-

ington Court within the Village of Schaumburg, Illinois ("the Property"). Because the Property had been designated as a historic landmark, appellees, which include the Village of Schaumburg ("the Village") and various Village officials, denied the Nevels' request to install the vinyl siding and revoked a building permit that had been obtained by the Nevels' siding contractor. Instead of challenging appellees' actions in state court, the Nevels elected to file a three-count federal suit, which alleged a claim for denial of equal protection along with two state law claims. The district court granted summary judgment in favor of appellees on the equal protection claim and one of the state law claims and then declined to exercise jurisdiction over the remaining state law claim. The Nevels appeal.

## BACKGROUND

The Property, known as the Kern-Schmidt mansion, was a large home built in 1930. The Nevels purchased the Property at an auction in March 1999. The Property's previous owner, Girard Kretzschmar, had owned the Property since February 1997.[1] On December 9, 1997, the Village enacted an ordinance designating the Property as a historic landmark ("the designation ordinance"). Under Village of Schaumburg Ordinance § 31.136(A)(2), prior to enacting a designation ordinance,

> The Commission[2] shall notify the owner of such property of the proposed designation. The Commission shall

---

[1]  Kretzschmar received title to the property through a Trustee's Deed which was recorded with the Cook County Recorder on February 26, 1997.

[2]  The Commission is the Olde Schaumburg Centre Commission, a thirteen-member panel designed to advise the Village Board of Trustees on matters relating to historic preservation.

schedule a public hearing on the question of the proposed designation, setting forth a date, time and place and causing written notice to be given to the owner or any person having a legal or equitable interest in said property being proposed for designation.

In preparation for the hearing on the Property, the Village sent the requisite notice to neighboring property owners; however, instead of notifying Kretzschmar, the Village sent certified mail notice to Alison Schmidt France, who had owned the property prior to Kretzschmar.[3] The Village also published notice of the hearing in a local newspaper. It is undisputed that the Village failed to serve Kretzschmar with notice of its intent to designate the Property as a historic landmark or to notify him of the public hearing on the matter. In fact, Kretzschmar only learned of the designation ordinance after it had been enacted by reading about it in the newspaper. The landmark designation was, however, properly recorded with the Cook County Recorder of Deeds.

Once a property is designated a historic landmark, Village of Schaumburg Ordinance § 31.137 makes it

unlawful for any person to construct, move, alter, change, make addition to, make any improvement to, add structures or buildings on a lot or tract with a designated historical landmark, demolish or remove the exterior or any aspect of the exterior of any designated historic landmark, unless the village has previously authorized such work.

Despite these restrictions, there is nothing in the record to indicate that Kretzschmar did anything to challenge the historical designation of the Property once he became aware of it.

---

[3] The Village asserts that at the time the notice was sent France was designated in township records as the owner of the Property.

When the Nevels purchased the Property, they were aware that it had historical significance, but they claim they were unaware of its historic landmark designation. Additionally, the Nevels' title insurer did not discover the properly recorded landmark designation in its investigation prior to issuing its title insurance policy to the Nevels. At the time the Nevels purchased the Property, it had wood siding. In April 1999, Marty Nevel told Village Senior Planner Timothy Teddy that he was considering covering the Property's exterior with a stucco material known as "dryvit" to eliminate a lead paint hazard connected with the wood siding. According to the Nevels, Teddy recommended against the dryvit and instead suggested that the Nevels use either aluminum or vinyl siding. The Nevels further assert that Teddy told Marty Nevel to obtain building permits from the Village when he was ready to begin the project but said nothing about the Property's historic landmark status.

The Nevels determined that it would cost $157,000 to install vinyl siding on the Property compared to $250,000 to replace the existing siding with new wood. The Nevels decided to use vinyl siding and, in August 1999, hired a contractor, Nu-Concepts, Incorporated, to do the job. The Nevels then spent over $125,000 for siding materials, and Nu-Concepts performed preparatory work on the Property. The Nevels assert that Marty Nevel spoke with Teddy about the siding again at the end of August 1999 and contend that Teddy again told him to apply to the Village for building permits, but did not mention the Property's landmark status.

On September 16, 1999, Village Planner Frank Robbins called Marty Nevel at his office and inquired about the Nevels' plans for the Property. Robbins informed Marty of the Property's status as a historic landmark and told Marty that the installation of vinyl siding would require approval by the Village following a recommendation by

the Olde Schaumburg Centre Commission ("the Commission"). That same day, Marty Nevel sent a letter to Robbins requesting approval to install vinyl siding. Robbins also sent Marty Nevel a letter dated September 16th, as a follow-up to the telephone conversation. After receiving Robbins' letter, Marty Nevel understood that he would need to appear before the Commission to seek approval for the siding.

On September 17, 1999, Nu-Concepts applied for and obtained a building permit from the Village to install vinyl siding on the Property. The Nevels assert that, at the time the permit was issued, Nu-Concepts was not aware of Marty Nevel's contacts with Robbins, and the Nevels did not know Nu-Concepts was applying for a permit. The permit was issued by a secretary in the Building and Code Enforcement Department for the Village. The secretary followed normal procedure in issuing the permit, checking only to see if Nu-Concepts was licensed and bonded. The secretary did not know that the Property was a designated landmark, and the permit process did not require her to ask the applicant whether the proposed work was being performed on a designated landmark.

With the permit in hand, Nu-Concepts began to install the vinyl siding. It is unclear from the record when the Nevels found out that work had begun. Approximately two to three weeks after installation had begun, Marty Nevel informed Nu-Concepts that the Commission was going to hold a hearing to determine what, if any, restrictions applied to the exterior of the Property. Marty Nevel did not ask Nu-Concepts to stop working until the Commission's determination was made, and the installation continued.

On October 3, 1999, Robbins sent a letter to Marty Nevel, advising him that the Nevels' request would be considered at the Commission's October 21, 1999 meeting. Robbins

stated that the Commission's staff was going to recommend that the Commission either deny the request for vinyl siding or revoke "the landmark status of the property as altered with the vinyl siding" based on the fact that "preservation authorities generally concur that vinyl siding should not be applied to landmark buildings."

On October 14, 1999, Teddy issued a report on behalf of the Commission's staff. Teddy's report indicated that the Nevels were requesting either approval to install vinyl siding or revocation of the Property's historic landmark designation which would remove the architectural controls placed on the Property. Teddy recommended that the Commission deny both requests. Robbins signed off on Teddy's report.

The Nevels were unable to attend the Commission's October 21st meeting, so a subsequent meeting was set for November 4, 1999. On October 27, 1999, employees of the Village's Building and Code Enforcement Department posted a stop work order on the Property. The Village, however, did not revoke the September 17th building permit before posting this stop work order. By this time, Nu-Concepts had installed vinyl siding on a portion of the Property's exterior.

At the November 4th Commission meeting, the Nevels requested either a variance allowing the use of vinyl siding or that the Property's landmark status be removed. Marty Nevel stated his goal was not to remove the landmark status; however, he added that he and his wife wanted to remodel rather than restore the Property The Nevels were planning on using the Property as their private residence and were funding the project personally and not pursuing any tax credits, and therefore, the landmark status did not matter to them. At the conclusion of the November 4th meeting, the Commission voted unanimously to recommend the denial of both the request to remove the

landmark status and the request to allow vinyl siding. This recommendation was conveyed to the Village Board. The Village Board discussed the Nevels' requests in a meeting held November 9, 1999. The Board unanimously voted to deny the request to revoke the Property's historical landmark designation. The Board then denied the Nevels' request to allow vinyl siding by a four to three vote.

Following the November 9th meeting, the Nevels, after consulting with their attorney, resumed the installation of vinyl siding, relying on the September 17th building permit that had not been revoked. Work continued until December 20, 1999, at which point eighty-five percent of the siding had been completed. On December 20th, employees from the Building and Code Enforcement Department again posted a stop work order on the Property. The Building and Code Enforcement Department also issued and served citations to Marty Nevel and Nu-Concepts for failure to obey a stop work order. Village Police ordered Nu-Concepts employees to leave the Property immediately or face arrest. The Village then suspended Nu-Concepts' business license.

After December 20th, Village Police patrolled the Property with instructions to arrest anyone caught working on the siding. Nels Hornstrom, the Director of Building and Code Enforcement for the Village, wrote Marty Nevel a letter dated December 20, 1999 in which he stated that because the stop work order had been ignored, no certificate of occupancy would be issued for the Property. Hornstrom stated that he had requested that water and sewer services not be authorized for the Property and that he would inform other utility companies that no utility services could be begun. Hornstrom closed by informing Marty Nevel that as the property owner he was responsible for removing any of the siding that had been placed illegally. On January 4, 2000, Marty Nevel was served with additional citations for making nonconform-

ing alterations to a historic landmark and for performing work without a building permit.

Trial on all of the citations began on February 10, 2000 before a Cook County Circuit Judge. Following two days of trial, at the close of the Village's case-in-chief, the judge granted a directed verdict against the Village on all of the citations, stating that no evidence had been presented to show any misrepresentation in obtaining the September 17th building permit and that under Village ordinance, the Village was required to revoke the building permit before it could attempt to enforce a stop work order.

On February 16, 2000, Hornstrom sent the Nevels a letter which purported to revoke the permit based on a misrepresentation of material fact in the application. In March 2000, the Village refused to replace a broken water meter at the Property until the Nevels signed an acknowledgment which stated, "The issuance of this permit does not in any way waive the requirement that all exterior work conform to the prior decision of the Village Board with respect to the use of vinyl siding and stucco." Several Village officials also made comments to the press about the controversy, stating that in their opinions, the focus of the dispute had shifted from vinyl siding to what they perceived to be the Nevels' complete disregard for the law and the Village Board's decisions.

On May 16, 2000, the Nevels filed a three-count complaint against appellees in the United States District Court for the Northern District of Illinois. The complaint alleged that the historical landmark designation ordinance dealing with the Property was void *ab initio* based on the Village's failure to give requisite notice prior to its enactment (Count I), that the revocation of the September 17th building permit was illegal as a matter of state law (Count II), and an equal protection violation under 42 U.S.C. § 1983 (Count III). The district court granted

summary judgment in favor of appellees on Counts I and III. The district judge then declined to exercise jurisdiction over Count II's state law claim, entering judgment in favor of appellees on Counts I and III and dismissing Count II for lack of subject matter jurisdiction. The Nevels filed this timely appeal, challenging the district court's grant of summary judgment in favor of appellees on Counts I and III.

## ANALYSIS

We review the district court's grant of summary judgment *de novo*, viewing all of the facts and drawing all reasonable inferences in favor of the nonmoving party, here the Nevels. *See Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 454 (7th Cir. 2002). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### A.  *Validity of Historic Landmark Designation Ordinance*

The Nevels contend that the designation ordinance enacted by the Village on December 9, 1997 was void *ab initio* because the Village failed to give Kretzschmar proper notice before enacting the ordinance. The Nevels assert that this lack of notice violated (1) Village ordinance, (2) state law, and (3) the due process clause of the United States Constitution. Under Illinois law,

> [a] court cannot handle matters which in effect are attempts to overrule decisions of a legislative body based upon alleged failure to follow requirements imposed by the body on itself. . . . We have authority to invalidate legislation . . . only upon grounds that the enactment violates a provision of the Federal or State constitutions or violates the mandate of a State or Federal statute.

*City of Elgin v. County of Cook*, 660 N.E.2d 875, 881 (Ill. 1995) (internal quotations and citations omitted).

In the present case, the Nevels cannot show a violation of state or federal law. Any due process violation that may have occurred affected Kretzschmar's rights, not those of the Nevels. The Nevels lack standing to raise a claim based on the due process rights of a third party. *See Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 474 (1982). Furthermore, the enactment of the designation ordinance did not violate any Illinois statute. The Nevels contend that the notice provisions of Village of Schaumburg Ordinance § 31.136 are mandated by § 11-48.2-4 of the Historic Preservation Division of the Illinois Municipal Code, 65 Ill. Comp. Stat. 5/11-48.2-4. Section 11-48.2-4 provides, in relevant part:

> No action taken by the municipality under this section directing a private owner to do or refrain from doing any specific thing, or refusing to permit a private owner to do some specific thing he desires to do, in connection with property designated by ordinance hereunder, shall be taken by the municipality except after due notice to such owner and opportunity for him to be heard at a public hearing.

Appellees contend, and the district court held, that § 11-48.2-4 is superceded by the later ordinance enacted under the Village's home rule power. The Nevels assert that § 11-48.2-4 applies concurrently with regulations established by home rule municipalities. Section 11-48.2-4 does not expressly address its applicability to home rule units.[4]

---

[4] Home rule power was created by the Illinois Constitution of 1970, article VII, section 6(a) which provides, "Except as limited by this Section, a home rule unit may exercise any power and

(continued...)

The Nevels rely on *Patrick Media Group, Inc. v. Ad-Ex, Inc.*, 608 N.E.2d 427 (Ill. App. Ct. 1992), in which the Illinois Appellate Court held that, absent a clear statement negating the state's concurrent regulation, zoning provisions of the Illinois Municipal Code which were amended and reenacted after the effective date of the Illinois Constitution of 1970 applied to home rule units. This ruling was based on the fact that the Illinois Constitution of 1970 "allows home rule units to exercise powers concurrently with the State to the extent that the legislature does not impose limitations on such concurrently exercised powers or declares the State's exercise to be exclusive." *Id.* at 429. The Nevels contend that under *Patrick Media Group*, § 11-48.2-4 obligated the Village to enact and comply with the notice provisions set out in Village Ordinance § 31.136(A)(2). However, even assuming § 11-48.2-4 applies concurrently with the Village's home rule power, the Nevels fail to show a violation of state law. Section 11-48.2-4 requires "due notice" to the property owner. The Nevels cite no cases and cannot point to anything in the statute to support their contention that due notice under § 11-48.2-4 requires personal, written notice. In the present case, it is undisputed that the Village gave notice by publication prior to enacting the designation ordinance. The Nevels fail to show that this is insufficient under § 11-48.2-4; therefore, their claim that the designation ordinance is void because it was enacted in violation of state law fails.

We turn now to the Nevels' contention that under *In re Application of the County Collector of Kane County*, 547 N.E.2d 107 (Ill. 1989) ("*County Collector*"), the desig-

[4] (...continued)

perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare . . . ."

nation ordinance should be invalidated because, in enacting it, the Village failed to comply with a "mandatory" ordinance provision. The present case, however, is distinguishable from *County Collector*. In *County Collector*, the Illinois Supreme Court invalidated a municipal ordinance for failure to comply with publication and time-lapse provisions created by municipal ordinance, based on a finding that those provisions were mandatory. *Id.* at 112. The ordinance at issue in *County Collector* expressly stated that it would not become effective until "after . . . publication and lapse of time prescribed by law." *Id.* at 110. The applicable law was a municipal ordinance which set out the options for publication and provided, "no . . . ordinance shall take effect until ten (10) days after it is so published." *Id.* Despite this statement, the "ordinance was not published nor was any lapse of time observed." *Id.* The court held that the failure to comply with the publication and time-lapse provisions rendered the ordinance ineffective based on the express statement in the ordinance that it would not become effective until after these provisions were fulfilled. *Id.* In the present case, while § 31.136(A)(2) provides, "[t]he Commission shall notify the owner . . . of the proposed designation," it does not state that the ordinance will not take effect until such notice is given. Therefore, assuming *County Collector* creates a mandatory ordinance provision exception to the general rule that an ordinance may only be invalidated if it violates federal or state law, the notice provisions in the present case cannot be considered mandatory under *County Collector*. The Nevels' contention that the designation ordinance was void based on the Village's failure to comply with a mandatory ordinance provision fails.

While it is undisputed that the Village failed to comply with its own procedural ordinances, this failure is insufficient under Illinois law to justify invalidation of the desig-

nation ordinance. The Nevels' attempts to invalidate the designation ordinance based on an alleged violation of Kretzschmar's due process rights also fails. The district court correctly granted summary judgment in favor of appellees on Count I.

## B. *Equal Protection Claim*

In Count III of their complaint, the Nevels claimed that appellees violated their constitutional right to equal protection of the laws by denying their request to install vinyl siding, issuing a stop work order without first revoking the building permit, revoking the building permit following the state court decision, refusing to issue a permit for a burglar alarm, and refusing to install a new water meter. As a result of these alleged violations, the Nevels sought to recover actual and punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983. The Nevels are proceeding under a "class of one" equal protection theory as recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). In order to succeed under such a theory, the Nevels must show that they were (1) "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" or (2) "that the government is treating unequally those individuals who are prima facie identical in all relevant respects, and that the cause of the differential treatment is a 'totally illegitimate animus toward the plaintiff by the defendant.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (citations omitted). Under the second approach, if the government would have taken the action anyway, the animus will not condemn the action. *Id*. "Ill will must be the sole cause of the complained-of action." *Id*.

With respect to their request to install siding, the Nevels assert that they were treated less favorably than the

owners of two similarly situated buildings who were allowed to install vinyl or steel siding. First, the Nevels point to a single family residence which was not a designated historic landmark but which was located within the Olde Schaumburg Centre District, an area in which alteration of building exteriors can be done only with approval of the Village Board after recommendation by the Commission. This property known as the "Carroll house" was sided with vinyl siding in 1982. Property owner Jo Ann Carroll filed an affidavit stating that prior to the installation of the siding, she and her husband obtained a building permit from the Village but did not obtain permission from the Commission or the Village Board to install the siding. According to Carroll's affidavit, at no time has the Village either required the Carrolls to obtain approval for the siding or requested that the siding be removed.

The Nevels next point to a Village-owned building known as "The Barn" which is a designated historic landmark that is used for civic activities. The Barn is located on a two-and-a-half acre plot outside of the Olde Schaumburg Centre District. In 1990, the exterior of the Barn posed a lead paint hazard, and the Village resided the Barn with steel siding after the Commission recommended approving the installation of siding.

We will assume there is a triable issue as to whether these two properties are similarly situated, although it is fairly clear that the Carroll house is not. The Nevels attempt to proceed under a totally illegitimate animus theory, alleging that, absent personal animus toward them, the Village would have granted their request to install vinyl siding. The Nevels contend that the Village denied their request not based on historic preservation considerations but rather to punish them for beginning construction prematurely. As evidence in support of their position, the Nevels point to comments made by several of the Village

Trustees at and after the November 9th meeting. These statements range from Trustee Marge Connelly's comment in voting against the Nevels' request for siding that it was clear to her that Marty Nevel was aware he needed to get approval but proceeded with the siding before obtaining that approval to Trustee Pat Riley's comments to the press in early 2000 that Marty Nevel was "a guy who decided to violate the law" and "[n]owhere in this country should the reward for violating a village ordinance or law be a pat on the back, a sly wink and 'Go ahead.'" Under the totally illegitimate animus approach, a plaintiff must show that the government action "'was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective.'" *Albiero*, 246 F.3d at 932 (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995)). In the present case, the Village Board has a legitimate interest in ensuring that its rules and regulations are upheld. Even if it could be shown that the Board denied the Nevels' request in order to punish them for beginning work on the siding before receiving the requisite approval, this would not constitute a totally illegitimate animus. The Nevels cannot show an equal protection violation based on the Village's denial of their request to install vinyl siding.

Turning to the other alleged violations—issuing a stop work order without first revoking the building permit, revoking the building permit following the state court decision, refusing to issue a permit for a burglar alarm, and refusing to install a new water meter—the Nevels fail to point to any similarly situated property owners who were treated more favorably by appellees than they were. In their brief on appeal, the Nevels make no comparisons whatsoever, instead choosing to rely on the fact that appellee Hornstrom in his affidavit mentioned no examples of cases in which he acted as he allegedly did in the present case. The Nevels, however, have the burden of proof, and after being confronted with a motion for summary

judgment, they had the responsibility of taking reasonable steps to provide evidence to create a genuine issue of material fact on the issue. *Albiero*, 246 F.3d at 933. "'[A] complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" *Purze*, 286 F.3d at 454 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Therefore, the district court correctly granted summary judgment in favor of appellees on the Nevels' equal protection claim.

## CONCLUSION

For the reasons set forth above, the decision of the district court is AFFIRMED.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*